# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| **ROBERTO GARCIA, and ANA PENA AND GENARO PENA, and ROSA REYNA, and PEDRO ESTRADA AND DELIA ESTRADA, individually and on behalf of others similarly situated,** | § § § § § § | |
| **Plaintiffs,** | § § | **Case No. _____** |
| **v.** | § § § | **JURY DEMAND** |
| **ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, and ALLSTATE INDEMNITY COMPANY, and ALLSTATE TEXAS LLOYDS, and ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY** | § § § § § § § | |
| **Defendants.** | § | |

## CLASS ACTION COMPLAINT

COME NOW Plaintiffs ROBERTO GARCIA, and ANA PENA AND GENARO PENA, and ROSA REYNA, and PEDRO ESTRADA AND DELIA ESTRADA, individually and on behalf of others similarly situated (collectively "Plaintiffs"), and file this Class Action Complaint against Allstate Fire and Casualty Insurance Company ("Allstate Fire"), Allstate Indemnity Company ("Allstate Indemnity"), Allstate Texas Lloyds ("Allstate Lloyds"), and Allstate Vehicle and Property Insurance Company ("Allstate Vehicle"), and (collectively "Defendants"). Plaintiffs allege the following:

## TABLE OF CONTENTS

CLASS ACTION COMPLAINT ................................................................................................ i

TABLE OF CONTENTS ...................................................................................................... ii

INTRODUCTION .............................................................................................................. iii

OVERVIEW OF CLAIMS .................................................................................................... 1

    A.   Rules Regarding Reducing Policy Coverages at Renewal ......................... 1

    B.   AP4970 is a Coverage-Reducing Endorsement ..................................... 7

    C.   The Texas Department of Insurance even Reminded Defendants to Comply with Renewal Statutes ........................................................................................... 13

    D.   The Allstate Defendants' Unlawful Conduct .................................... 13

PARTIES, RESIDENCY, JURISDICTION AND VENUE .............................................. 19

FACTS ........................................................................................................................ 22

    A.   Introduction and Scope of Lawsuit .................................................. 22

    B.   The Garcia Insurance Policy and Loss ............................................. 22

    C.   The Pena Insurance Policy and Loss ................................................ 28

    D.   The Reyna Insurance Policy and Loss .............................................. 34

    E.   The Estrada Insurance Policy and Loss ............................................ 40

AMOUNT IN CONTROVERSY ....................................................................................... 48

CLASS ACTION ALLEGATIONS ................................................................................... 49

CAUSES OF ACTION ...................................................................................................... 55

    A.   MOTION FOR STAY ...................................................................... 55

    B.   COUNT 1: RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"). 18 U.S.C. § 1961–1968 ............................................... 56

    C.   COUNT 2: VIOLATIONS OF TEXAS INSURANCE CODE (CH. 551, SUPP. 28 TEX. ADMIN. CODE 5.9750 – 5.9752; CH. 541) ...................................... 60

    D.   COUNT 3: BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING ...... 64

    E.   COUNT 4: BREACH CONTRACT ..................................................... 66

    F.   COUNT 5: UNJUST ENRICHMENT .................................................. 68

    G.   COUNT 6: FRAUD & CONSPIRACY TO COMMIT FRAUD ..................... 70

    H.   COUNT 7: DECLARATORY JUDGMENT AND RELIEF ......................... 74

JURY DEMAND ............................................................................................................. 77

PRAYER FOR RELIEF ..................................................................................................... 78

## <u>INTRODUCTION</u>

Plaintiffs bring this class action against Defendants, four Allstate subsidiaries, for systematically reducing coverage in homeowners' policies by introducing the AP4970 endorsement without providing requisite statutory notice in violation of Texas law.

Defendants inserted AP4970 into policy renewals without disclosure, converting key coverages from Replacement Cost Value (RCV) to Actual Cash Value (ACV), reducing benefits payable under claims.

This conduct violates Texas Insurance Code §§ 551.065, 551.11055, 2002.201, 2002.002 and 28 Texas Administrative Code §§ 5.9750 – 5.9752.

Defendants' failure to provide proper notice or offer consideration for coverage reduction constitutes fraudulent misrepresentation, breach of contract, and violations of consumer protection laws.

Defendants engaged in a widespread scheme, furthered through mail and wire fraud as well as bank fraud, constituting a pattern of racketeering activity under RICO (18 U.S.C. § 1962).

## OVERVIEW OF CLAIMS

1.      This is a class action case arising out of a dispute between policyholders and four property insurers, Defendants, all of which are subsidiaries of the Allstate Corporation. The seminal legal dispute before the Court is whether Defendants slipped a coverage-reducing endorsement (**AP4970**) into policyholders' homeowners' policies of insurance during policy renewals without requisite statutory notice in violation of Texas State Law.[1]

### A.      Rules Regarding Reducing Policy Coverages at Renewal

2.      Tex. Ins. Code Chapter 551 – Subchapter C governs reductions of coverage provided within homeowners' insurance policies and specifically applies to authorized insurers writing property and casualty insurance in Texas.[2] By and large, Subchapter C has been in effect since April 1, 2005, with pertinent provisions addressed herein effective since September 1, 2017.

3.      Under Subchapter C, an insurer has "canceled" an insurance policy if, without the consent of the insured, it "reduces or restricts coverage under the policy by endorsement or other means," except as provided by § 551.1055.[3] A cancellation of an insurance policy made in violation of Subchapter C "has no effect."[4]

4.      Tex. Ins. Code § 551.1055 addresses how insurers may make material changes to a policy on renewal. A "material change" means a change to a policy that, with respect to a prior or existing policy: (1) reduces coverage; (2) changes conditions of coverage; or (3) changes the duties of the insured.[5] The "insurer" must provide written notice to the insured of any material changes in compliance with subsections (c) and (d).[6]

---

[1] Specifically, in violation of Texas Insurance Code §§ 551.065, 551.11055, 2002.201, 2002.002 & 28 Texas Administrative Code §§ 5.9750 – 5.9752.
[2] Tex. Ins. Code § 551.101; 551.102 (2).
[3] Tex. Ins. Code § 551.103 (3).
[4] Tex. Ins. Code § 551.111.
[5] Tex. Ins. Code § 551.1055 (a).
[6] Tex. Ins. Code § 551.1055 (b). The statute specifically states the "insurer" must provide the notice – not a

5.      Subsection (c) provides that to effectively add a coverage-reducing endorsement to a policy at renewal, the insurer must provide written notice to the policyholder which must: "(1) appear in a conspicuous place in the notice of renewal; (2) clearly indicate each material change to the policy being made on renewal; (3) be written in plain language; and (4) be provided to the insured not later than the 30th day before the renewal date."[7] Under subsection (d), this written notice must be provided by the insurer to the insured "not later than the 30th day before the earliest date on which the new policy form is used."[8]

6.      Subchapter C also provides that the Commissioner of the Texas Department of Insurance may adopt rules relating to the cancellation of insurance policies.[9]

7.      After Tex. Ins. Code § 551.1055's enactment in 2017, many insurers were found by the Texas Department of Insurance to be non-compliant with the statute. Therefore, additional legislation went into effect on February 12, 2020.[10]

8.      On April 21, 2020, the Commissioner of the Texas Department of Insurance published Commissioner's Bulletin # B-0022-20 regarding Notices of Material Change, stating:

"The Texas Department of Insurance (TDI) reminds insurers that under the Insurance Code and TDI rules notices of material change must be:

- clear;
- written in plain language;
- appear in a conspicuous place; and
- provided to the insured at least 30 days before renewal or the date the policy expires.

TDI has received complaints about insurers not fulfilling some of these requirements. We encourage all insurers to review the requirements carefully, verify their compliance efforts, and report any suspected violations."

---

policyholder's insurance agent. Subsection (d) makes this distinction clear, inasmuch as the "insurer" must *also* provide notice to "each agent." Tex. Ins. Code § 551.1055 (d).
[7] Tex. Ins. Code§ 551.1055(c).
[8] Tex. Ins. Code § 551.1055(d).
[9] Tex. Ins. Code § 551.112.
[10] 28 TAC §§5.9750 - 5.9752. Further addressed, *infra*.

The Commissioner continued, referencing Texas Administrative Code statutes which had been enacted specifically to bolster Chapter 551's requirements:

"Specific issues to watch for include:

**Does the notice clearly indicate the change and is it located in a conspicuous place?** Depending upon the applicable line of insurance, insurers may have different statutory obligations. Insurers should carefully review Insurance Code Sections 551.056, 551.1055, 2002.001, and 2002.102, to ensure they are following the appropriate statutory requirements. Generally, a notice of material change must:

- appear in a conspicuous place;
- clearly indicate each material change to the policy;
- be written in plain language; and
- be provided to the insured not later than the 30th day before the renewal or expiration date.

TDI rules 28 TAC Sections 5.9750 – 5.9752, effective February 12, 2020, further define conspicuous. In part, the rules require the first page of a renewal notice to include the notice of material change or conspicuously indicate where the change can be found in the document.

**Does a change from replacement cost coverage to actual cash value coverage require an insurer to send a notice of material change?** TDI rule 28 TAC Section 5.9752 requires additional explanation in the notice of material change when an insurer makes a change from replacement cost to actual cash value.

**Does the notice of material change need to be sent every time the insurer makes any change to a policy?** A notice of material change is required when an insurer makes a change to a prior or existing policy that reduces coverage, changes coverage conditions, or changes the duties of the insured at renewal. TDI rule 28 TAC Section 5.9750 provides some examples of these situations. A notice of material change is not required for changes that increase coverage.

**Is the insurer using policy forms consistent with the information provided to TDI when the forms were approved?** If the way an insurer is using a policy form changes, the insurer may need to update its form filing. For example, an insurer may have stated that an endorsement limiting roof coverage to actual cash value was optional to the policyholder. If the insurer later chooses to make this form mandatory for some or all policyholders, the insurer must make an updated form filing."

*See* TDI Commissioner's Bulletin # B-0022-20. (emphasis original).

9.    The Texas Legislature's intent in enacting 28 TAC §§5.9750 - 5.9752 was

extensively outlined in its proposed legislation notes. *See* 2019 TX REG TEXT 535382 (NS).

The Legislature stated:

> "**EXPLANATION.**
> …
> Before SB 417, insurers that wanted to provide less coverage to an existing policyholder were required to cancel or nonrenew the policy and give the policyholder a new offer. SB 417 created an exception that allows insurers to avoid canceling or nonrenewing the policy by providing policyholders and agents with a notice of material change describing the reductions in coverage.
> …
> **Section 5.9750**. The proposal adds new §5.9750, which clarifies the applicability of the proposed sections and provides examples of material changes. Section 5.9750 is necessary to prevent confusion about notices of material change subject to the proposed sections, and to clarify the types of changes that require a notice.
>
> **Section 5.9751**. The proposal adds new §5.9751, which provides requirements for the notice of material change. It harmonizes  the conspicuousness requirement in the proposed sections and Insurance Code §§551.1055(c)(1), 2002.001(b)(2)(A), and 2002.102(c)(1) with the definition of "conspicuous" in Business and Commerce Code §1.201(b)(10). It also clarifies that "material change" includes material changes to the entire policy or to any part of it. Section 5.9751 is necessary to ensure a consistent interpretation of "conspicuous" between the Insurance Code, the Business and Commerce Code, and the proposed sections. It is also necessary to ensure that material changes to one type of risk or coverage" for example, changes to coverage for a roof from replacement cost to actual cash value" are subject to the same notice requirements as material changes to the policy as a whole.
> …
> **Section 5.9752**. The proposal adds new §5.9752, which clarifies that a change from replacement cost coverage to actual cash value coverage is a material change and provides requirements for the notice. For a change from replacement cost to actual cash value coverage, §5.9752 requires that a notice of material change explain the terms "replacement cost" and "actual cash value" in plain language. It also requires that if the notice uses the term "depreciation," it must also include a plain-language explanation of that term. New §5.9752 also requires that a notice of material change that describes a change from replacement cost to actual cash value coverage must include at least one plain-language example that shows the difference in dollar amounts between coverage before and after the material change. Section 5.9752 includes a sample figure to illustrate a possible way to list the amounts a policyholder might receive for a total roof replacement. Insurers are not limited to using the sample figure, and they may use other content and formatting.
>
> New §5.9752 clarifies that a change in coverage from replacement cost to actual cash value is a material change that requires notice under SB 417. Unlike replacement cost coverage, actual cash value coverage includes a deduction for

depreciation, which reduces coverage under a policy. However, the inquiries and complaints TDI has received regarding replacement cost, actual cash value, and depreciation indicate that the differences in coverage are not easy for consumers to understand. As a result, §5.9752 is also necessary to ensure that consumers get clear descriptions and illustrations of actual cash value and replacement cost coverage. Without those explanations, consumers are unlikely to appreciate the impact of a change in coverage from replacement cost to actual cash value, and they are unlikely to be able to make informed coverage choices.

…

**PUBLIC BENEFIT AND COST NOTE**

…

administering the proposed sections will have the public benefit of helping consumers understand the impact of material changes to their policies, especially for changes as significant as moving from replacement cost coverage to actual cash value coverage. This knowledge will enable consumers to shop for and buy policies with the coverage they need, which will reduce the number of unpaid claims and encourage insurers to offer the coverages consumers want.

…

Insurers are free to choose the method by which they make material changes to policies. Insurers are only required to provide the notice of material change if they choose it instead of a notice of nonrenewal. SB 417 gives insurers the option of providing a notice of material change instead of a notice of nonrenewal, which would otherwise be required for
reductions in coverage.

…

For insurers that choose to send a notice of material change, the proposed sections clarify the statutory requirements that the notice be conspicuous, in plain language, and clearly indicate the material change."

*See* 2019 TX REG TEXT 535382 (NS).

10.    As clearly addressed by the Texas Department of Insurance Commissioner and the Texas Legislature, 28 Tex. Admin Code §§ 5.9750 – 5.9752 were specifically enacted to ensure that insurers such as Defendants would comply with Chapter 551. This legislation specifically "appl[ies] to policies and insurers that are subject to Insurance Code Chapter 551, Subchapter C."[11]

11.    Section 5.9750 fleshes out some examples (but not an exhaustive list) of "material changes" that Chapter 551 did not specifically enumerate when it was enacted. Pertinent

---

[11] 28 Tex. Admin. Code § 5.9750 (a), (b).

examples include "changes from replacement cost to actual cash value," or "removing an item or act that was previously covered under the policy," or "limiting the types of coverage under the policy."[12]

12.    Section 5.9751 provides that statutory notices of material change must be conspicuous as that term is defined in Tex. Buis. Comm. Code § 1.201(b)(1).[13] Likewise, when a notice of material change is included in a renewal notice (as opposed to a separate letter sent to the policyholder), the <u>first page</u> of the renewal notice must include the notice of material change, or conspicuous text that clearly indicates the location of the notice of material change in the renewal offer.[14]

13.    Section 5.9752 provides extensive detail regarding the substance notices must contain when "any part" of a policy has a change of coverage from Replacement Cost Value coverage to Actual Cash Value Coverage.[15] The section requires plain language definitions which <u>must</u> be included for the terms "replacement cost" and "actual cash value."[16] The section also provides that "depreciation" <u>must</u> be defined in the notice and likewise provides a plain language definition.[17] The section also provides that there must be at least one plain-language example that shows the difference in dollar amounts between coverage before and after the material change.[18] The section even provides an extensive graphic example of how this plain-language example could be written.[19]

14.    Plaintiffs all had policies with Defendants – four Allstate Corporation subsidiaries.

---

[12] 28 Tex. Admin. Code § 5.9750 (c).
[13] 28 Tex. Admin. Code § 5.9751 (a).
[14] 28 Tex. Admin. Code § 5.9751 (b).
[15] 28 Tex. Admin. Code § 5.9752.
[16] 28 Tex. Admin. Code § 5.9752 (b).
[17] 28 Tex. Admin. Code § 5.9752 (c).
[18] 28 Tex. Admin. Code § 5.9752 (d).
[19] *Id.*

15.    Each Plaintiff had policies which did not initially include **AP4970** endorsements.

16.    **AP4970** is a coverage-reducing endorsement which converts part of each Plaintiff's policy coverage from Replacement Cost Value to Actual Cash Value.

17.    Each Defendant added the **AP4970** endorsement to Plaintiffs' respective policies without providing the statutory notice required by law.

18.    This "slippage" occurred during each Plaintiff's policy renewal between 2020 and 2021.

19.    Each Defendant did this to every single policyholder it insured throughout the entire state of Texas.

**B.    AP4970 is a Coverage-Reducing Endorsement**

20.    Plaintiffs each had homeowners' insurance policies with an Allstate subsidiary Defendant. In each of their policies the terms "actual cash value" and "depreciation" were ambiguous before **AP4970** was unlawful slipped into their policies during a renewal.

21.    Generally, the policies stated that "there may be a deduction for depreciation" when payment is made on an "actual cash value" basis. However, the policies did not define the terms "actual cash value" or "depreciation," and most certainly did not specify what elements of a loss were subject to depreciation.

22.    Throughout the insurance industry, depreciation is generally accepted as the loss of value of property as it ages, is subjected to wear and tear, and deteriorates or becomes obsolete. As an example, a roof that is installed with 25-year composite shingles (warranted by the manufacturer to last 25 years before becoming obsolete/failing) would generally be expected to withstand 25-years of the elements, barring a loss event such as a storm. Generally, if that roof is 10 or 15 years old at the time a loss occurs, depreciation may be estimated to be 40% or 60%,

respectively, as its age vs. expected lifespan can generally be considered in calculating depreciation.[20]

23.    Although disputes often arise, the physical wear and tear and depreciation of <u>tangible</u> goods is well-recognized throughout the insurance industry, as are general methods of calculating such depreciation. Where this becomes tricky, however, is when <u>non-tangibles</u> must be adjusted for as part of a loss.

24.    <u>Tangible Depreciation</u>. Using the above example, the tangible roof *shingles* can reasonably be depreciated based upon their age, lifespan, and condition at the time the loss occurred. Likewise, the *felt* and *plywood decking* beneath those shingles, the roof *vents* and other roofing *accessories* can all be depreciated based upon their age, lifespan and condition. These are physical goods and materials which have experienced some level of wear and tear and/or obsolescence before the loss occurs.

25.    <u>Non-Tangible Depreciation</u>. When this same roof needs to be replaced however, there are many elements of the claim that expand beyond mere tangible goods that would need to be purchased and installed. Examples of non-tangibles may include: costs associated with *labor* (for the removal of the damaged roof and installation of a new one), costs associated with *overhead and profit* (including, but not limited, to a contractor's markup for overseeing multiple tradesman in a complex loss), *renting equipment* (for example, a boom lift on a large commercial job or a very tall building), building code and local ordinance *permits or fees* (required by many municipalities), or *taxes* (including, e.g. sales taxes incurred on purchasing goods and materials, as well as taxes charged on the total restoration project).

26.    While it can generally be accepted that a tangible roof would lose its value as it

---

[20] This is, of course, a massive oversimplification, but provided solely for exemplar purposes.

ages, non-tangible costs associated with replacing that same roof cannot and/or should not be depreciated as part of a claim adjustment.

27.    Property insurers within the Allstate insurance group, including Defendants, have faced repeated lawsuits around the country concerning their practice of depreciating future labor from ACV payments. *See, e.g., Perry, et al. v. Allstate Indem. Co.*, 1:16-cv-01522 (N.D. Ohio); *Ferguson-Luke v. Allstate Property & Casualty Ins. Co.*, 1:20-cv-00807 (N.D. Ohio); *Maniaci v. Allstate Ins. Co.*, 1:20-cv-00613 (N.D. Ohio); *Lado v. Allstate Vehicle and Prop. Ins. Co.*, 1:20-cv-01417 (N.D. Ohio); *Huey v. Allstate Vehicle and Prop. Ins. Co.*, 4:19-cv-00153 (N.D. Miss.); *Hester v. Allstate Vehicle & Prop. Ins. Co.*, 20L0462 (St. Clair County, Illinois); *Mitchell et al. v. Allstate Vehicle Prop. Ins. Co., et al.*, 2:21-cv-00347 (S.D. Ala.); *Thaxton v. Allstate Indem. Co.*, 2020L000908 (Madison County, Illinois).

28.    Whether labor may be depreciated in the absence of a labor depreciation permissive policy form was addressed by the Fifth Circuit Court of Appeals in *Mitchell v. State Farm Fire & Cas. Co.*, 954 F.3d 700 (5th Cir. 2020) (interpreting Mississippi law). In *Mitchell*, the Firth Circuit held that both the insurer and insured's interpretations of the otherwise undefined phrase "actual cash value" were reasonable, thus the policy was ambiguous and must be construed in favor of the insured. *Id*. at 703, 707.

29.    As addressed, *infra*., the *Mitchell* decision led to Defendants' creation of the **AP4970** endorsement.

30.    After the *Mitchell* decision, its applicability was tested using Texas law with some of the same Allstate Defendants named in this complaint. *Sims v. Allstate Fire and Casualty Insurance Company*, 650 F.Supp.3d 540 (W.D. Tex., Jan. 11, 2023).

31.    In *Sims*, several Texas homeowners filed a class action complaint in the Western

District of Texas, urging that the same Allstate Defendants in this suit wrongfully depreciated non-tangible aspects of their claims, resulting in underpayments of their property damage claims.

32.     Importantly, each of the class representatives in *Sims* <u>did not have **AP4970** "labor depreciation permissive forms" in their policies.</u> Their claims arose prior to Defendants' creation of the **AP4970** endorsement. *Infra.*

33.     In ruling on a Motion to Dismiss filed early in the *Sims* case, Judge Jason Pulliam held:

> "The Fifth Circuit's holding in *Mitchell* is dispositive because Texas law and Mississippi law are the same with regard to contractual interpretation and are substantially similar with regard to the definition and interpretation of "actual cash value". *Mitchell*, 954 F.3d at 703-05. In its consideration of substantially similar pertinent case law, substantially similar policy provisions and omissions, and the indistinguishable arguments by the parties regarding interpretation of the policy provisions, the *Mitchell* Court concluded the term "actual cash value" was ambiguous in the context of the insurance policy because each party's interpretation was reasonable. Consequently, the Mitchell Court held the ambiguity must be resolved in favor of the insured. *Mitchell*, 954 F.3d at 705-07.

> Because the Court finds no relevant or determinative distinguishing points between pertinent Texas law and the Mississippi law and the subject insurance policy terms analyzed and applied in *Mitchell*, this Court will follow the Fifth Circuit's holding in *Mitchell*. Following this guidance, as a matter of first impression with regard to application of the Fifth Circuit's ruling in *Mitchell* to a case arising in Texas and governed by Texas law, **this Court concludes the undefined term "actual cash value" as it appears in the subject insurance policy contracts is ambiguous because each party's interpretation is reasonable. This ambiguity must be resolved in Plaintiffs' favor, that is, the term "actual cash value" in the subject Policies does not include depreciation of anticipated labor costs.** *See Mitchell*, 954 F.3d at 703-07.

> For this reason, Plaintiffs state a plausible cause of action for breach of contract based upon the Allstate Defendants' calculation of ACV to include depreciation of labor costs. Consequently, the Allstate Defendants' Motion to Dismiss on this basis shall be denied."

*Sims*, 650 F.Supp.3d at 546. (emphasis added).

34.     Judge Orlando L. Garcia was presented with the same exact issue and rendered

the exact same ruling when presented with Liberty Mutual insurance policies in a similar class action which raised the same issues (depreciating labor costs on property damage claims). *See Cortinas et. al v. Liberty Mutual et. al*, 5:22-cv-00544-OLG-HJB (W. D. Tex.). Specifically, Judge Garcia ruled the following:

> "The *Mitchell* Court concluded that "ACV" was ambiguous under Mississippi law because both interpretations were reasonable. *Id.* at 706–07 (explaining that Mitchell's interpretation was reasonable and accorded with the state's definition of ACV "because it restores an insured to her status at the moment before the damage occurred").
>
> Here, the Court finds no relevant distinctions between Mississippi and Texas law on this issue. Because the policy provisions, pertinent rules of construction, and arguments presented by the parties are substantially similar, **the Court finds that _Mitchell_ is dispositive of the question at bar.** *See id*. Accordingly, at this juncture, the Court finds that Plaintiffs have stated plausible claims for breach of contract and, thus, declaratory relief."

*Cortinas et. al v. Liberty Mutual et. al*, 5:22-cv-00544-OLG-HJB (W. D. Tex., Mar. 14, 2023). [Dkt. 37]. (emphasis added).

35.    Importantly, the *Mitchell* decision was based on Mitchell's policy <u>not expressly stating</u> whether labor and other non-tangibles could be depreciated. Indeed, the class representatives in both *Sims* and *Cortinas* had policies which <u>did not state</u> whether labor and other non-tangibles could be depreciated. All of these cases involved ambiguous policies where depreciation was not defined to include non-tangible elements of an underlying property damage claim.

36.    The Allstate Defendants knew this – and they attempted to avoid this issue by creating the **AP4970** endorsement. However, the manner by which it was added to every policyholder's policy throughout the State of Texas was unlawful.

37.    On August 6, 2020 Defendants filed for approval with the Texas Department of

Insurance ("TDI") to have the **AP4970** endorsement used in their policies.[21] In their application, Defendants stated that the **AP4970** endorsement would be "<u>Mandatory</u>" in their policies.[22]

38.    **AP4970** provides:

"Throughout the policy, when determining the actual cash value of the loss, the costs necessary to repair, rebuild or replace the destroyed, damaged, or stolen property may be depreciated. Such costs subject to depreciation may include, but are not limited to, goods, materials, equipment, labor, overhead and profit, taxes, fees or similar charges. [] All other policy terms and conditions apply."

39.    When Allstate applied to have **AP4970** approved for usage with TDI, it was required to provide a description for the form. Allstate stated: "*Allstate is updating policy language __in response to recent labor depreciation rulings__, requiring that policies specifically define non-material cost components as being depreciable.*" (emphasis added). Of course, what Allstate was referring to was the Fifth Circuit's recent decision in *Mitchell*, which had held that if a policy did not expressly provide for the depreciation of labor, labor must be paid on a replacement cost value basis. *Supra*. Allstate, in drafting **AP4970** extended *Mitchell*'s reasoning from just labor to all non-material cost components of a claim.

40.    Allstate knew that **AP4970** reduced coverage for their policyholders. Allstate specifically knew that the addition of **AP4970** endorsements to its policies would convert all non-tangible portions of a claim from Replacement Cost Value coverage to Actual Cash Value coverage.

41.    TDI ultimately approved the **AP4970** form for usage in *newly issued* policies effective December 14, 2020. Likewise, TDI approved usage of **AP4970** in *renewed* policies

---

[21] Texas Department of Insurance records indicate that the companies included "Allstate Insurance Company," "Allstate Fire and Casualty Insurance Company," "Allstate Indemnity Company," "Allstate Texas Lloyd's," and "Allstate Vehicle and Property Insurance Company."

[22] TDI provides three options for form usage: (1.) "<u>Optional</u>" – "The policy form or endorsement will be used only if the insured chooses to add it to the insured's policy," (2.) "<u>Mandatory</u>" – "The policy form or endorsement will be required on all policies," or (3.) "<u>Conditional Mandatory</u>" – "The policy form or endorsement will be required under certain situations."

effective January 28, 2021.[23]

42.     The creation of this endorsement was not necessarily unlawful – TDI approved the form. While AP4970 *may be* enforceable in *newly* issued policies, its addition to *existing* policies at renewal after January 28, 2021 without proper notice was unlawful.[24]

**C.     The Texas Department of Insurance even Reminded Defendants to Comply with Renewal Statutes**

43.     Upon approving **AP4970** for usage, TDI sent written correspondence to the Allstate Defendants which stated: "*We remind you that if your company reduces coverage, changes conditions of coverage, or changes the duties of the insured, you must provide a notice of material change to policyholders and agents. Insurance Code 551.056, 551.1055, 2002.001, 2002.002; 28 TAC 5.9750-5.9752.*"

44.     The Allstate Defendants as authorized insurers doing business within the State of Texas were bound by the Texas Insurance Code, as well as the above-stated Administrative Code provisions. In addition to being legally bound by these statutes, the Allstate Defendants received ***explicit reminders*** from TDI regarding their obligation to comply.

**D.     The Allstate Defendants' Unlawful Conduct**

45.     The Allstate Defendants did not comply with statutory requirements. Instead, beginning as early the form was approved for usage in renewals (on or about January 28, 2021), Allstate simply slipped **AP4970** into every single policyholder's renewal notice, which were sent throughout the State of Texas via mail and wires.

46.     **AP4970** is a coverage-reducing endorsement, and therefore statutory written

---

[23] The Class Representatives in *Sims v. Allstate* all sued on policies which pre-dated AP4970.
[24] There are conflicting opinions regarding whether a provision such as AP4970 is enforceable at all, though this is not a legal issue presented in this Class Action Complaint. *Mitchell*, *Sims*, and *Cortinas* were all decided upon interpreting policies that contained no such express language. Contractual ambiguity was determinative in those cases.

notice of material change was required to be provided by Allstate to its policyholders. Allstate failed to send written notice. Allstate delegated the task of sending renewal notices to its independent policy sales agents throughout the State of Texas, in violation of Tex. Ins. Code § 551.1055 (b). The renewal notices failed to comply with Texas State Law, as addressed, *infra*.

47.    The Allstate Defendants did not provide conspicuous notice of the material change to its policyholders, in violation of Tex. Ins. Code § 551.1055 (c)(1).

48.    The Allstate Defendants did not clearly indicate each material change being made to the policy on renewal to its policyholders, in violation of Tex. Ins. Code § 551.1055 (c)(2).

49.    The Allstate Defendants did not provide a notice of material change written in plain language to its policyholders, in violation of Tex. Ins. Code § 551.1055 (c)(3).

50.    The Allstate Defendants did not provide its policyholders with written notice of material change no later than the 30th day before the policy renewal date, in violation of Tex. Ins. Code § 551.1055 (c)(4).

51.    The **AP4970** endorsement changed coverage for non-tangibles from replacement cost to actual cash value and is therefore explicitly subject to 28 TAC §§ 5.9750 (c)(1), 5.9751 (c), 5.9752 (a).

52.    The Allstate Defendants did not provide its policyholders with written notice of material change that was conspicuous in violation of Tex. Ins. Code § 551.1055(c)(1).

53.    The Allstate Defendants did not provide its policyholders with written notice of material change that was conspicuous as that term is defined in Texas Business and Commerce Code § 1.201(b), in violation of 28 TAC §§ 5.9751(a).

54.    The Allstate Defendants did not provide its policyholders with written notice of material change reflected on the first page of renewal notices (or conspicuous Texas that clearly

indicates the location of the notice in the renewal offer), in violation of 28 TAC §§ 5.9751(b).

55.    The Allstate Defendants did not provide its policyholders with written notice of material change that, using plain language, explained at a minimum what the terms "replacement cost" and "actual cash value" meant, in violation of 28 TAC §§ 5.9752(b).

56.    The Allstate Defendants did not provide its policyholders with written notice of material change that, provided a statutorily-required definition of the term "depreciation," in violation of 28 TAC §§ 5.9752(c).

57.    The Allstate Defendants did not provide its policyholders with written notice of material change that, included at least one plain-language example that showed the difference in dollar amounts between coverage before and after the material change, in violation of 28 TAC §§ 5.9752(d).

58.    With regard to every policyholder throughout the State of Texas, the Allstate Defendants reduced coverage without proper notice. Likewise, the Allstate Defendants offered no consideration (e.g. a reduction in premium) for the addition of these endorsements. These endorsements were not requested by the Allstate Defendants' policyholders.

59.    The Allstate Defendants devised a scheme to defraud its policyholders, or to obtain money by means of false or fraudulent pretenses, representations, or promises. Allstate failed to send statutory notices of material change to its policyholders, who in turn, believed their policies were being renewed with the same coverages. For the purposes of executing this scheme or attempting to do so, the Allstate Defendants engaged the United States Postal Service and knowingly caused non-compliant renewal notices to be delivered to their policyholders. The acts were done in violation of 18 U.S. Code § 1341 ("Mail Fraud").

60.    Similarly, The Allstate Defendants devised a scheme for obtaining money by

means of false or fraudulent pretenses, representations, or promises which was executed through the use of wire communication in interstate or foreign commerce. This wired communication included writings which were sent for the purpose of executing their scheme. The acts were done in violation of 18 U.S. Code § 1343 ("Wire Fraud").

61.     Many of the Allstate Defendants' policyholders had mortgagees with insurable interests in their insured properties. In many of the policies, financial institutions were explicitly named as "Additional Insureds." The Allstate Defendants knowingly executed a scheme to defraud these financial institutions, in violation of 18 U.S. Code § 1344 ("Bank Fraud").

62.     In consideration of Paras. 59-61, Plaintiffs allege, individually, and on behalf of others similarly situated, that the Allstate Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"). 18 U.S.C. § 1961–1968. The Allstate Defendants conspired to slip **AP4970** endorsements into every policyholders' policy throughout the State of Texas with no intent to provide requisite statutory notice. Collectively, the Allstate Defendants were an enterprise and collaborated for this common purpose, thereby committing Mail Fraud, Wire Fraud, and Bank Fraud. These racketeering activities proximately caused Plaintiffs and others similarly situated to suffer financial injury.

63.     The Allstate Defendants violated Texas Insurance Code § 541.061 by making material misrepresentations regarding the terms of their insurance policies. The Allstate Defendants made untrue statements of material fact regarding Plaintiffs' coverages, failed to state material facts, made misleading statements, made material misstatements of law, and failed to disclose facts required by law to be disclosed.

64.     Plaintiffs bring forth this action individually and on behalf of others similarly situated under Texas Insurance Code § 541.151 for Defendants' violations of Texas Insurance

Code § 541.061.

65.    Plaintiffs bring forth this action also for breach of contract individually, and on behalf of others similarly situated. Plaintiffs maintained contracts of insurance with the Allstate Defendants. The Allstate Defendants committed material unilateral breaches of these contracts by making material changes without any consideration tendered to Plaintiffs, without Plaintiffs' consent, and without requisite statutory notice.

66.    Plaintiffs bring forth this action also for breach of the duty of good faith and fair dealing individually, and on behalf of others similarly situated. Defendants, knowingly and with malice, reduced coverage for every policyholder in the State of Texas without complying with state law. Defendants knew that these endorsements were unenforceable because Defendants failed to comply with statutes governing making material changes to homeowners' policies. Despite this, Defendants urged – and continues to urge – across tens of thousands of claims throughout the state since 2021 that non-tangible elements of claims must be depreciated, with actual knowledge that **AP4970** was not lawfully added to these policyholder's policies. Across the sheer multitude of claims throughout the State of Texas since **AP4970** was crafted, the Allstate Defendants have deprived thousands of homeowners millions of dollars, using the unenforceable **AP4970** endorsement as a shield from paying what is contractually owed.

67.    Plaintiffs bring forth this action also for unjust enrichment individually, and on behalf of others similarly situated. Defendants collected premiums at renewal while reducing or attempting to reduce coverage under renewed policies without providing proper statutory notice, resulting in unjust enrichment at the policyholders' expense.

68.    Plaintiffs bring forth this action also for fraud individually, and on behalf of others similarly situated. Defendants made false or misleading statements to their policyholders

throughout the State of Texas that their policies were being renewed with the same or similar coverages. Defendants knowingly omitted requisite notice of reductions in coverage with the intent that their policyholders would believe the coverages afforded were actually the same or similar to those coverages in place before renewal. Defendant knew that it was required to give statutory notice of material changes and knew that the changes set forth in **AP4970** were material. Defendants intended to deceive their policyholders by omitting requisite statutory notice. Plaintiffs relied on these knowing misrepresentations to their detriment by agreeing to renew their policies and tender payment of premiums for coverages which had actually been reduced, thereby suffering damages. Moreover, Plaintiffs, individually and on behalf of others similarly situated, later filed property damage claims and Defendants wrongfully denied and/or underpaid their claims, relying in part on **AP4970** as a basis for such underpayments.

## PARTIES, RESIDENCY, JURISDICTION AND VENUE

69.    Plaintiff **Roberto Garcia** ("Garcia") is a citizen of the State of Texas and lives in Laredo, Texas. At all times relevant hereto, Garcia owned the dwelling and other structures located at 3611 Aguanieve Drive, Laredo, TX 78046-7774 (the "Insured Garcia Property") insured by **Allstate Fire and Casualty Insurance Company** Policy No. 916675766.

70.    Plaintiffs **Ana Pena & Genaro Pena** (the "Penas" or collectively "Pena") are citizens of the State of Texas and live in El Paso, Texas. At all times relevant hereto, the Penas owned the dwelling and other structures located at 125 N Moorefield Rd, Mission, TX 78572-6738 (the "Insured Pena Property") insured by **Allstate Indemnity Company** Policy No. 886858788.

71.    Plaintiff **Rosa Reyna** ("Reyna") is a citizen of the State of Texas and lives in Irving, Texas. At all times relevant hereto Reyna owned the dwelling and other structures located at 301 Solar Drive, Mission, TX 78574-2356 (the "Insured Reyna Property") insured by **Allstate Texas Lloyd's** Policy No. 216105063.

72.    Plaintiffs **Pedro Estrada and Delia Estrada** (the "Estradas" or collectively "Estrada") are citizens of the State of Texas and live in Irving, Texas. At all times relevant hereto the Estradas owned the dwelling and other structures located at 506 Martinez Ave, Alamo, TX 78516-3739 (the "Insured Reyna Property") insured by **Allstate Vehicle and Property Insurance Company** Policy No. 838178130.

73.    Defendant **Allstate Fire** is organized under the laws of the State of Illinois with its principal place of business in Northbrook, Illinois. Allstate Fire is authorized to sell property insurance policies in the State of Texas, including within this judicial district. Allstate Fire sold such a policy to **Garcia**.

74. Defendant **Allstate Indemnity** is organized under the laws of the State of Illinois with its principal place of business in Northbrook, Illinois. Allstate Indemnity is authorized to sell property insurance policies in the State of Texas, including within this judicial district. Allstate Indemnity sold such a policy to **the Penas**.

75. Defendant **Allstate Texas** is a residential Lloyds plan incorporated in the State of Texas, yet as a Lloyds plan, its citizenship is considered to be foreign with its principal place of business in Northbrook, Illinois. Allstate Texas is authorized to sell property insurance policies in the State of Texas, including within this judicial district. Allstate Texas sold such a policy to **Reyna**.

76. Defendant **Allstate Vehicle** is organized under the laws of the State of Illinois with its principal place of business in Northbrook, Illinois. Allstate Fire is authorized to sell property insurance policies in the State of Texas, including within this judicial district. Allstate Vehicle sold such a policy to **the Estradas**.

77. Allstate Fire, Allstate Indemnity, Allstate Texas and Allstate Vehicle all maintain the same Registered Agent for Service of Process: **CT Corporation System, 1999 Bryan St. STE 900, Dallas, TX 75201-3136**.

78. Defendants are affiliated insurance companies within the Allstate insurance group, and are subsidiaries of the Allstate Corporation, which owns and controls each. Defendants share the same corporate headquarters.

79. Defendants engaged in the unlawful conduct pled herein uniformly. Property insurers within the Allstate insurance group collectively operate a centralized claims adjustment and policy underwriting operation. Defendants engaged in the same unlawful conduct pertaining to the sweeping inclusion of AP4970 endorsements to each of their policyholders throughout the

State of Texas uniformly.

80.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring claims on behalf of themselves and a putative class of Defendants' property insurance policyholders who are similarly situated throughout the entire State of Texas.

81.     Venue is proper in this forum pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Additionally, Defendants have agents in the Southern District of Texas, including the McAllen Division for the conduct of their usual and customary business, including the sale and servicing of property insurance policies and the handling and payment of claims associated with those policies of insurance. Moreover, Defendants' co-conspirators including policy sales agents primarily reside in and conduct business in this Court's jurisdiction.

82.     Subject matter jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). There is estimated to be in excess of 1,000,000 members in the proposed class and the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

83.     This Court has personal jurisdiction over Defendants because they have availed themselves of the privilege of conducting business and issuing insurance contracts  covering structures in the State of Texas.

## FACTS

### A.    Introduction and Scope of Lawsuit

84.    As addressed *supra*., this lawsuit arises out of Defendants' underwriting abuses throughout the State of Texas. Defendants slipped **AP4970** into every homeowners' policy of insurance throughout the State of Texas without providing requisite notice.

### B.    The Garcia Insurance Policy and Loss

85.    Garcia contracted with Allstate Fire for an insurance policy providing coverage for certain losses to the Insured Garcia Property. The policy number was 916675766 (the "Garcia Policy").

86.    Garcia paid Allstate Fire premiums in exchange for insurance coverage.  The required premiums were paid at all times relevant to this Complaint.

87.    Before Allstate Fire obtained approval from TDI to begin using **AP4970**, Garcia had an insurance policy with Allstate Fire. Under the terms of this policy, labor, equipment rentals, overhead and profit, taxes, fees or similar charges were payable on a replacement cost value basis as a matter of law.

88.    On or about February 2021, Allstate Fire added AP4970 to the Garcia policy, which converted replacement cost value coverage to actual cash value coverage for labor, equipment rentals, overhead and profit, taxes, fees or similar charges. The requisite statutory notice of this reduction in coverage was not provided to Garcia. Garcia did not request or authorize this reduction of coverage. Garcia did not receive any contractual consideration for this reduction of coverage.

89.    **AP4970** is a coverage-reducing endorsement, and therefore statutory written notice of material change was required to be provided by Allstate Fire to Garcia. Allstate Fire failed to send written notice. Allstate Fire delegated the task of sending renewal notices to its

independent policy sales agents throughout the State of Texas, in violation of Tex. Ins. Code § 551.1055 (b).

90.    Garcia's agent <u>Hector Dominguez</u> (709 Alta Vista #101, Laredo, TX 78041-3394; (956) 726-4649) sent Garcia a renewal notice on or about December 2020, for his policy which would renew in February 2021. Allstate Fire never sent a renewal notice to Garcia. Moreover, no statutorily-compliant notice of material change was ever provided to Garcia regarding **AP4970**. The renewal notice failed to comply with Texas State Law, as addressed, *infra*. The renewal notice was over a dozen pages long. It included a cover letter, the policy's declarations, and several pages of attachments. The first page (cover letter) mentioned absolutely nothing about material changes being made to the policy. The AP4970 endorsement was buried halfway through the renewal notice. This is the only notice of material change that Allstate Fire claims was sent to Garcia.

91.    Allstate Fire did not provide conspicuous notice of the material change to Garcia, in violation of Tex. Ins. Code § 551.1055(c)(1). Allstate Fire did not clearly indicate each material change being made to the policy on renewal to Garcia, in violation of Tex. Ins. Code § 551.1055 (c)(2).

92.    Allstate Fire did not provide a notice of material change written in plain language to Garcia, in violation of Tex. Ins. Code § 551.1055 (c)(3).

93.    Allstate Fire did not provide Garcia with written notice of material change no later than the 30th day before the policy renewal date, in violation of Tex. Ins. Code § 551.1055 (c)(4).

94.    The **AP4970** endorsement changed coverage for non-tangibles from replacement cost to actual cash value and is therefore explicitly subject to 28 TAC §§ 5.9750 (c)(1), 5.9751 (c), 5.9752 (a).

95.    Allstate Fire did not provide Garcia with written notice of material change that was conspicuous as that term is defined in Texas Business and Commerce Code § 1.201(b), in violation of 28 TAC §§ 5.9751(a).

96.    Allstate Fire did not provide Garcia with written notice of material change that was conspicuous as that term is defined in Texas Business and Commerce Code § 1.201(b), in violation of 28 TAC §§ 5.9751(a).

97.    Allstate Fire did not provide Garica with written notice of material change reflected on the first page of renewal notices (or conspicuous text that clearly indicates the location of the notice in the renewal offer), in violation of 28 TAC §§ 5.9751(b).

98.    Allstate Fire did not provide Garcia with written notice of material change that, using plain language, explained at a minimum what the terms "replacement cost" and "actual cash value" meant, in violation of 28 TAC §§ 5.9752(b).

99.    Allstate Fire did not provide Garcia with written notice of material change that, provided a statutorily-required definition of the term "depreciation," in violation of 28 TAC §§ 5.9752(c).

100.    Allstate Fire did not provide Garcia with written notice of material change that, included at least one plain-language example that showed the difference in dollar amounts between coverage before and after the material change, in violation of 28 TAC §§ 5.9752(d).

101.    With regard to every policyholder throughout the State of Texas, Allstate Fire reduced coverage without proper notice. Likewise, Allstate Fire offered no consideration (e.g. a reduction in premium) for the addition of these endorsements. These endorsements were not requested by Garcia or any other of Allstate Fire's policyholders. Summarily, Allstate Fire is believed to have slipped **AP4970** into every policyholder's policy in the same manner done to

Garcia.

102.    Allstate Fire devised a scheme to defraud its policyholders, including Garcia, or to obtain money by means of false or fraudulent pretenses, representations, or promises. Allstate Fire failed to send statutory notices of material change to its policyholders, including Garcia, who in turn, believed their policies were being renewed with the same coverages. For the purposes of executing this scheme or attempting to do so, Allstate Fire engaged the United States Postal Service and knowingly caused non-compliant renewal notices to be delivered to its policyholders. The acts were done in violation of 18 U.S. Code § 1341 ("Mail Fraud").

103.    Similarly, Allstate Fire devised a scheme for obtaining money by means of false or fraudulent pretenses, representations, or promises which was executed through the use of wire communication in interstate or foreign commerce. This wired communication included writings which were sent for the purpose of executing their scheme. Such wires were sent to Allstate Fire's policyholders throughout the State of Texas, including Garcia. The acts were done in violation of 18 U.S. Code § 1343 ("Wire Fraud").

104.    Many of Allstate Fire's policyholders had mortgagees with insurable interests in their insured properties. In many of the policies, financial institutions were explicitly named as "Additional Insureds." Allstate Fire knowingly executed a scheme to defraud these financial institutions, in violation of 18 U.S. Code § 1344 ("Bank Fraud"). Specific to Garcia, M&T Bank maintained an insurable interest in the Garcia property, and the coverages for this insurable interest were slashed by Allstate Fire without ever providing requisite statutory notice.

105.    In consideration of Paras. 102-104, Garcia alleges, individually, and on behalf of others similarly situated, that Allstate Fire violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"). 18 U.S.C. § 1961–1968. Allstate Fire, in addition to the other

Allstate Defendants conspired to slip AP4970 endorsements into every policyholders' policy throughout the State of Texas with no intent to provide requisite statutory notice. This conspiracy was furthered through the United States Postal Service and interstate wires through Allstate Fire's relationships with its statewide insurance agencies, most of which are captive agencies. Collectively, Allstate Fire, individually, and as a subsidiary of the Allstate Corporation and its relationship with independent captive agencies throughout the State of Texas was an enterprise and collaborated for this common purpose, thereby committing Mail Fraud, Wire Fraud, and Bank Fraud. These racketeering activities proximately caused Garcia and others similarly situated to suffer financial injury.

106.    Allstate Fire also violated the Texas Insurance Code § 541.061 by misrepresenting insurance policies. Allstate Fire made untrue statements of material fact regarding Garcia's coverages, failed to state material facts, made misleading statements, made material misstatements of law, and failed to disclose facts required by law to be disclosed.

107.    Garcia brings forth this action individually and on behalf of others similarly situated under Texas Insurance Code § 541.151 for Allstate Fire's violations of Texas Insurance Code § 541.061.

108.    Garcia brings forth this action also for breach of contract individually, and on behalf of others similarly situated. Garcia maintained a contract of insurance with Allstate Fire. Allstate Fire committed material unilateral breaches of this contract by making material changes without any consideration tendered to Garcia, without Garcia's consent, and without requisite statutory notice.

109.    Garcia brings forth this action also for breach of the duty of good faith and fair dealing individually, and on behalf of others similarly situated. Allstate Fire, knowingly and with

malice, reduced coverage for every policyholder in the State of Texas, including Garcia, without complying with state law. Allstate Fire knew that these endorsements were unenforceable because Allstate Fire failed to comply with statutes governing making material changes to homeowners' policies. Despite this, Allstate Fire urged – and continues to urge – across tens of thousands of claims throughout the state since 2021, including a claim filed by Garcia, that non-tangible elements of claims must be depreciated, with actual knowledge that AP4970 was not lawfully added to these policies, including Garcia's policy. Across the sheer multitude of claims throughout the State of Texas since AP4970 was crafted, Allstate Fire have deprived thousands of homeowners millions of dollars, using the unenforceable AP4970 endorsement as a shield from paying what is contractually owed. Allstate Fire specifically deprived Garcia of such policy benefits.

110.    Garcia brings forth this action also for unjust enrichment individually, and on behalf of others similarly situated. Allstate Fire collected premiums at the time of renewal while simultaneously reducing, or attempting to reduce, coverages under those renewed policies without proper statutory notice resulting in a windfall of profits at their policyholders' expense. Allstate Fire specifically did this to Garcia, and did so to all other policyholders throughout the State of Texas.

111.    Garcia brings forth this action also for fraud individually, and on behalf of others similarly situated. Allstate Fire made false or misleading statements to its policyholders throughout the State of Texas, including Garcia, that their policies were being renewed with the same or similar coverages. Allstate Fire knowingly omitted requisite notice of reductions in coverage with the intent that their policyholders, including Garcia, would believe the coverages afforded were actually the same or similar to those coverages in place before renewal. Allstate

Fire knew that it was required to give statutory notice of material changes and knew that the changes set forth in AP4970 were material. Allstate Fire intended to deceive their policyholders, including Garcia, by omitting requisite statutory notice. Garcia relied on these knowing misrepresentations to his detriment by agreeing to renew their policies and tender payment of premiums for coverages which had actually been reduced, thereby suffering damages, and other homeowners throughout the State of Texas similarly relied on such knowingly false representations made by Allstate Fire. Moreover, Garcia, individually and on behalf of others similarly situated, later filed property damage claims and Allstate Fire wrongfully denied and/or underpaid his claim, relying in part on AP4970 as a basis for such underpayments.

## C.    The Pena Insurance Policy and Loss

112.    Pena contracted with Allstate Indemnity for an insurance policy providing coverage for certain losses to the Insured Pena Property. The policy number was 886858788 (the "Pena Policy").

113.    Pena paid Allstate Indemnity premiums in exchange for insurance coverage.  The required premiums were paid at all times relevant to this Complaint.

114.    Before Allstate Indemnity obtained approval from TDI to begin using **AP4970**, Pena had an insurance policy with Allstate Indemnity. Under the terms of this policy, labor, equipment rentals, overhead and profit, taxes, fees or similar charges were payable on a replacement cost value basis as a matter of law.

115.    On or about September 2021, Allstate Indemnity added AP4970 to the Pena policy, which converted replacement cost value coverage to actual cash value coverage for labor, equipment rentals, overhead and profit, taxes, fees or similar charges. Requisite notice of this reduction of coverage was not provided to Pena. Pena did not request or authorize this reduction

of coverage. Pena did not receive any contractual consideration for this reduction of coverage.

116.    **AP4970** is a coverage-reducing endorsement, and therefore statutory written notice of material change was required to be provided by Allstate Indemnity to Pena. Allstate Indemnity failed to send written notice. Allstate Indemnity delegated the task of sending renewal notices to its independent policy sales agents throughout the State of Texas, in violation of Tex. Ins. Code § 551.1055 (b).

117.    Pena's agent <u>Dominguez O Connor</u> (1500 N Conway Ave., Mission TX 78572-4003; (956) 581-8822) sent Pena a renewal notice on or about July 2020, for the policy which would renew in September 2021. Allstate Indemnity never sent a renewal notice to Pena. Moreover, no statutorily-compliant notice of material change was ever provided to Pena regarding **AP4970**. The renewal notice failed to comply with Texas State Law, as addressed, *infra*. The renewal notice was over a dozen pages long. It included a cover letter, the policy's declarations, and several pages of attachments. The first page (cover letter) mentioned absolutely nothing about material changes being made to the policy. The **AP4970** endorsement was buried halfway through the renewal notice. This is the only notice of material change that Allstate Indemnity claims was sent to Pena.

118.    Allstate Indemnity did not provide conspicuous notice of the material change to Pena, in violation of Tex. Ins. Code § 551.1055(c)(1). Allstate Indemnity did not clearly indicate each material change being made to the policy on renewal to Pena, in violation of Tex. Ins. Code § 551.1055 (c)(2).

119.    Allstate Indemnity did not provide a notice of material change written in plain language to Pena, in violation of Tex. Ins. Code § 551.1055 (c)(3).

120.    Allstate Indemnity did not provide Pena with written notice of material change no

later than the 30th day before the policy renewal date, in violation of Tex. Ins. Code § 551.1055 (c)(4).

121.    The **AP4970** endorsement changed coverage for non-tangibles from replacement cost to actual cash value and is therefore explicitly subject to 28 TAC §§ 5.9750 (c)(1), 5.9751 (c), 5.9752 (a).

122.    Allstate Indemnity did not provide Pena with written notice of material change that was conspicuous in violation of Tex. Ins. Code § 551.1055(c)(1).

123.    Allstate Indemnity did not provide Pena with written notice of material change that was conspicuous as that term is defined in Texas Business and Commerce Code § 1.201(b), in violation of 28 TAC §§ 5.9751(a).

124.    Allstate Indemnity did not provide Pena with written notice of material change reflected on the first page of renewal notices (or conspicuous Texas that clearly indicates the location of the notice in the renewal offer), in violation of 28 TAC §§ 5.9751(b).

125.    Allstate Indemnity did not provide Pena with written notice of material change that, using plain language, explained at a minimum what the terms "replacement cost" and "actual cash value" meant, in violation of 28 TAC §§ 5.9752(b).

126.    Allstate Indemnity did not provide Pena with written notice of material change that, provided a statutorily required definition of the term "depreciation," in violation of 28 TAC §§ 5.9752(c).

127.    Allstate Indemnity did not provide Pena with written notice of material change that, included at least one plain-language example that showed the difference in dollar amounts between coverage before and after the material change, in violation of 28 TAC §§ 5.9752(d).

128.    With regard to every policyholder throughout the State of Texas, Allstate

Indemnity reduced coverage without proper notice. Likewise, Allstate Indemnity offered no consideration (e.g. a reduction in premium) for the addition of these endorsements. These endorsements were not requested by Pena or any other of Allstate Indemnity's policyholders. Summarily, Allstate Indemnity is believed to have slipped **AP4970** into every policyholder's policy in the same manner done to Pena.

129.    Allstate Indemnity devised a scheme to defraud its policyholders, including Pena, or to obtain money by means of false or fraudulent pretenses, representations, or promises. Allstate Indemnity failed to send statutory notices of material change to its policyholders, including Pena, who in turn, believed their policies were being renewed with the same coverages. For the purposes of executing this scheme or attempting to do so, Allstate Indemnity engaged the United States Postal Service and knowingly caused non-compliant renewal notices to be delivered to its policyholders. The acts were done in violation of 18 U.S. Code § 1341 ("Mail Fraud").

130.    Similarly, Allstate Indemnity devised a scheme for obtaining money by means of false or fraudulent pretenses, representations, or promises which was executed through the use of wire communication in interstate or foreign commerce. This wired communication included writings which were sent for the purpose of executing their scheme. Such wires were sent to Allstate Indemnity's policyholders throughout the State of Texas, including Pena. The acts were done in violation of 18 U.S. Code § 1343 ("Wire Fraud").

131.    Many of Allstate Indemnity's policyholders had mortgagees with insurable interests in their insured properties. In many of the policies, financial institutions were explicitly named as "Additional Insureds." Allstate Indemnity knowingly executed a scheme to defraud these financial institutions, in violation of 18 U.S. Code § 1344 ("Bank Fraud"). Pena specifically

did not have a mortgage on the property, though many similarly situated Allstate Indemnity insureds are believed to have had mortgages.

132.    In consideration of Paras. 129-131, Pena alleges, individually, and on behalf of others similarly situated, that Allstate Indemnity violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"). 18 U.S.C. § 1961–1968. Allstate Indemnity, in addition to the other Allstate Defendants conspired to slip AP4970 endorsements into every policyholders' policy throughout the State of Texas with no intent to provide requisite statutory notice. This conspiracy was furthered through the United States Postal Service and interstate wires through Allstate Indemnity's relationships with its statewide insurance agencies, most of which are captive agencies. Collectively, Allstate Indemnity, individually, and as a subsidiary of the Allstate Corporation and its relationship with independent captive agencies throughout the State of Texas was an enterprise and collaborated for this common purpose, thereby committing Mail Fraud, Wire Fraud, and Bank Fraud. These racketeering activities proximately caused Pena and others similarly situated to suffer financial injury.

133.    Allstate Indemnity also violated the Texas Insurance Code § 541.061 by misrepresenting insurance policies. Allstate Indemnity made untrue statements of material fact regarding Pena's coverages, failed to state material facts, made misleading statements, made material misstatements of law, and failed to disclose facts required by law to be disclosed.

134.    Pena brings forth this action individually and on behalf of others similarly situated under Texas Insurance Code § 541.151 for Allstate Indemnity's violations of Texas Insurance Code § 541.061.

135.    Pena brings forth this action also for breach of contract individually, and on behalf of others similarly situated. Pena maintained a contract of insurance with Allstate Indemnity.

Allstate Indemnity committed material unilateral breaches of this contract by making material changes without any consideration tendered to Pena, without Pena's consent, and without requisite statutory notice.

136.    Pena brings forth this action also for breach of the duty of good faith and fair dealing individually, and on behalf of others similarly situated. Allstate Indemnity, knowingly and with malice, reduced coverage for every policyholder in the State of Texas, including Pena, without complying with state law. Allstate Indemnity knew that these endorsements were unenforceable because Allstate Indemnity failed to comply with statutes governing making material changes to homeowners' policies. Despite this, Allstate Indemnity urged – and continues to urge – across tens of thousands of claims throughout the state since 2021, including a claim filed by Pena, that non-tangible elements of claims must be depreciated, with actual knowledge that AP4970 was not lawfully added to these policies, including Pena's policy. Across the sheer multitude of claims throughout the State of Texas since AP4970 was crafted, Allstate Indemnity have deprived thousands of homeowners millions of dollars, using the unenforceable AP4970 endorsement as a shield from paying what is contractually owed. Allstate Indemnity specifically deprived Pena of such policy benefits.

137.    Pena brings forth this action also for unjust enrichment individually, and on behalf of others similarly situated. Allstate Indemnity collected premiums at the time of renewal while simultaneously reducing, or attempting to reduce, coverages under those renewed policies without proper statutory notice resulting in a windfall of profits at their policyholders' expense. Allstate Indemnity specifically did this to Pena, and did so to all other policyholders throughout the State of Texas.

138.    Pena brings forth this action also for fraud individually, and on behalf of others

similarly situated. Allstate Indemnity made false or misleading statements to its policyholders throughout the State of Texas, including Pena, that their policies were being renewed with the same or similar coverages. Allstate Indemnity knowingly omitted requisite notice of reductions in coverage with the intent that their policyholders, including Pena, would believe the coverages afforded were actually the same or similar to those coverages in place before renewal. Allstate Indemnity knew that it was required to give statutory notice of material changes and knew that the changes set forth in AP4970 were material. Allstate Indemnity intended to deceive their policyholders, including Pena, by omitting requisite statutory notice. Pena relied on these knowing misrepresentations to his detriment by agreeing to renew their policies and tender payment of premiums for coverages which had actually been reduced, thereby suffering damages, and other homeowners throughout the State of Texas similarly relied on such knowingly false representations made by Allstate Indemnity. Moreover, Pena, individually and on behalf of others similarly situated, later filed property damage claims and Allstate Indemnity wrongfully denied and/or underpaid his claim, relying in part on AP4970 as a basis for such underpayments.

### D.    The Reyna Insurance Policy and Loss

139.    Reyna contracted with Allstate Texas for an insurance policy providing coverage for certain losses to the Insured Reyna Property. The policy number was 216105063 (the "Reyna Policy").

140.    Reyna paid Allstate Texas premiums in exchange for insurance coverage.  The required premiums were paid at all times relevant to this Complaint.

141.    Before Allstate Texas obtained approval from TDI to begin using **AP4970**, Reyna had an insurance policy with Allstate Texas. Under the terms of this policy, labor, equipment rentals, overhead and profit, taxes, fees or similar charges were payable on a replacement cost

value basis as a matter of law.

142.    On or about November 2021, Allstate Texas added AP4970 to the Reyna policy, which converted replacement cost value coverage to actual cash value coverage for labor, equipment rentals, overhead and profit, taxes, fees or similar charges. Requisite notice of this reduction of coverage was not provided to Reyna. Reyna did not request or authorize this reduction of coverage. Reyna did not receive any contractual consideration for this reduction of coverage.

143.    **AP4970** is a coverage-reducing endorsement, and therefore statutory written notice of material change was required to be provided by Allstate Texas to Reyna. Allstate Texas failed to send written notice. Allstate Texas delegated the task of sending renewal notices to its independent policy sales agents throughout the State of Texas, in violation of Tex. Ins. Code § 551.1055 (b).

144.    Reyna's agent <u>Dominguez O Connor</u> (1500 N Conway Ave., Mission TX 78572-4003; (956) 581-8822) sent Reyna a renewal notice on or about September 2020, for her policy which would renew in November 2021. Allstate Texas never sent a renewal notice to Reyna. Moreover, no statutorily-compliant notice of material change was ever provided to Reyna regarding **AP4970**. The renewal notice failed to comply with Texas State Law, as addressed, *infra*. The renewal notice was over a dozen pages long. It included a cover letter, the policy's declarations, and several pages of attachments. The first page (cover letter) mentioned absolutely nothing about material changes being made to the policy. The **AP4970** endorsement was buried halfway through the renewal notice. This is the only notice of material change that Allstate Texas claims was sent to Reyna.

145.    Allstate Texas did not provide conspicuous notice of the material change to Reyna,

in violation of Tex. Ins. Code § 551.1055(c)(1). Allstate Texas did not clearly indicate each material change being made to the policy on renewal to Reyna, in violation of Tex. Ins. Code § 551.1055 (c)(2).

146.    Allstate Texas did not provide a notice of material change written in plain language to Reyna, in violation of Tex. Ins. Code § 551.1055 (c)(3).

147.    Allstate Texas did not provide Reyna with written notice of material change no later than the 30th day before the policy renewal date, in violation of Tex. Ins. Code § 551.1055 (c)(4).

148.    The **AP4970** endorsement changed coverage for non-tangibles from replacement cost to actual cash value and is therefore explicitly subject to 28 TAC §§ 5.9750 (c)(1), 5.9751 (c), 5.9752 (a).

149.    Allstate Texas did not provide Reyna with written notice of material change that was conspicuous in violation of Tex. Ins. Code § 551.1055(c)(1).

150.    Allstate Texas did not provide Reyna with written notice of material change that was conspicuous as that term is defined in Texas Business and Commerce Code § 1.201(b), in violation of 28 TAC §§ 5.9751(a).

151.    Allstate Texas did not provide Reyna with written notice of material change reflected on the first page of renewal notices (or conspicuous Texas that clearly indicates the location of the notice in the renewal offer), in violation of 28 TAC §§ 5.9751(b).

152.    Allstate Texas did not provide Reyna with written notice of material change that, using plain language, explained at a minimum what the terms "replacement cost" and "actual cash value" meant, in violation of 28 TAC §§ 5.9752(b).

153.    Allstate Texas did not provide Reyna with written notice of material change that,

provided a statutorily-required definition of the term "depreciation," in violation of 28 TAC §§ 5.9752(c).

154.    Allstate Texas did not provide Reyna with written notice of material change that, included at least one plain-language example that showed the difference in dollar amounts between coverage before and after the material change, in violation of 28 TAC §§ 5.9752(d).

155.    With regard to every policyholder throughout the State of Texas, Allstate Texas reduced coverage without proper notice. Likewise, Allstate Texas offered no consideration (e.g. a reduction in premium) for the addition of these endorsements. These endorsements were not requested by Reyna or any other of Allstate Texas's policyholders. Summarily, Allstate Texas is believed to have slipped **AP4970** into every policyholder's policy in the same manner done to Reyna.

156.    Allstate Texas devised a scheme to defraud its policyholders, including Reyna, or to obtain money by means of false or fraudulent pretenses, representations, or promises. Allstate Texas failed to send statutory notices of material change to its policyholders, including Reyna, who in turn, believed their policies were being renewed with the same coverages. For the purposes of executing this scheme or attempting to do so, Allstate Texas engaged the United States Postal Service and knowingly caused non-compliant renewal notices to be delivered to its policyholders. The acts were done in violation of 18 U.S. Code § 1341 ("Mail Fraud").

157.    Similarly, Allstate Texas devised a scheme for obtaining money by means of false or fraudulent pretenses, representations, or promises which was executed through the use of wire communication in interstate or foreign commerce. This wired communication included writings which were sent for the purpose of executing their scheme. Such wires were sent to Allstate Texas's policyholders throughout the State of Texas, including Reyna. The acts were done in

violation of 18 U.S. Code § 1343 ("Wire Fraud").

158.    Many of Allstate Texas's policyholders had mortgagees with insurable interests in their insured properties. In many of the policies, financial institutions were explicitly named as "Additional Insureds." Allstate Texas knowingly executed a scheme to defraud these financial institutions, in violation of 18 U.S. Code § 1344 ("Bank Fraud"). Reyna specifically had a mortgage on the property secured by Bank of America, NA which maintained an insurable interest on the property. Bank of America's insurable interest in the Reyna policy was materially reduced upon renewal without the requisite statutory notice.

159.    In consideration of Paras. 156-158, Reyna alleges, individually, and on behalf of others similarly situated, that Allstate Texas violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"). 18 U.S.C. § 1961–1968. Allstate Texas, in addition to the other Allstate Defendants conspired to slip AP4970 endorsements into every policyholders' policy throughout the State of Texas with no intent to provide requisite statutory notice. This conspiracy was furthered through the United States Postal Service and interstate wires through Allstate Texas's relationships with its statewide insurance agencies, most of which are captive agencies. Collectively, Allstate Texas, individually, and as a subsidiary of the Allstate Corporation and its relationship with independent captive agencies throughout the State of Texas was an enterprise and collaborated for this common purpose, thereby committing Mail Fraud, Wire Fraud, and Bank Fraud. These racketeering activities proximately caused Reyna and others similarly situated to suffer financial injury.

160.    Allstate Texas also violated the Texas Insurance Code § 541.061 by misrepresenting insurance policies. Allstate Texas made untrue statements of material fact regarding Reyna's coverages, failed to state material facts, made misleading statements, made

material misstatements of law, and failed to disclose facts required by law to be disclosed.

161.    Reyna brings forth this action individually and on behalf of others similarly situated under Texas Insurance Code § 541.151 for Allstate Texas's violations of Texas Insurance Code § 541.061.

162.    Reyna brings forth this action also for breach of contract individually, and on behalf of others similarly situated. Reyna maintained a contract of insurance with Allstate Texas. Allstate Texas committed material unilateral breaches of this contract by making material changes without any consideration tendered to Reyna, without Reyna's consent, and without requisite statutory notice.

163.    Reyna brings forth this action also for breach of the duty of good faith and fair dealing individually, and on behalf of others similarly situated. Allstate Texas, knowingly and with malice, reduced coverage for every policyholder in the State of Texas, including Reyna, without complying with state law. Allstate Texas knew that these endorsements were unenforceable because Allstate Texas failed to comply with statutes governing making material changes to homeowners' policies. Despite this, Allstate Texas urged – and continues to urge – across tens of thousands of claims throughout the state since 2021, including a claim filed by Reyna, that non-tangible elements of claims must be depreciated, with actual knowledge that AP4970 was not lawfully added to these policies, including Reyna's policy. Across the sheer multitude of claims throughout the State of Texas since AP4970 was crafted, Allstate Texas have deprived thousands of homeowners millions of dollars, using the unenforceable AP4970 endorsement as a shield from paying what is contractually owed. Allstate Texas specifically deprived Reyna of such policy benefits.

164.    Reyna brings forth this action also for unjust enrichment individually, and on

behalf of others similarly situated. Allstate Texas collected premiums at the time of renewal while simultaneously reducing, or attempting to reduce, coverages under those renewed policies without proper statutory notice resulting in a windfall of profits at their policyholders' expense. Allstate Texas specifically did this to Reyna, and did so to all other policyholders throughout the State of Texas.

165.    Reyna brings forth this action also for fraud individually, and on behalf of others similarly situated. Allstate Texas made false or misleading statements to its policyholders throughout the State of Texas, including Reyna, that their policies were being renewed with the same or similar coverages. Allstate Texas knowingly omitted requisite notice of reductions in coverage with the intent that their policyholders, including Reyna, would believe the coverages afforded were actually the same or similar to those coverages in place before renewal. Allstate Texas knew that it was required to give statutory notice of material changes and knew that the changes set forth in AP4970 were material. Allstate Texas intended to deceive their policyholders, including Reyna, by omitting requisite statutory notice. Reyna relied on these knowing misrepresentations to his detriment by agreeing to renew their policies and tender payment of premiums for coverages which had actually been reduced, thereby suffering damages, and other homeowners throughout the State of Texas similarly relied on such knowingly false representations made by Allstate Texas. Moreover, Reyna, individually and on behalf of others similarly situated, later filed property damage claims and Allstate Texas wrongfully denied and/or underpaid his claim, relying in part on AP4970 as a basis for such underpayments.

## E.    The Estrada Insurance Policy and Loss

166.    Estrada contracted with Allstate Vehicle for an insurance policy providing coverage for certain losses to the Insured Estrada Property. The policy number was 838178130

(the "Estrada Policy").

167.    Estrada paid Allstate Vehicle premiums in exchange for insurance coverage. The required premiums were paid at all times relevant to this Complaint.

168.    Before Allstate Vehicle obtained approval from TDI to begin using **AP4970**, Estrada had an insurance policy with Allstate Vehicle. Under the terms of this policy, labor, equipment rentals, overhead and profit, taxes, fees or similar charges were payable on a replacement cost value basis as a matter of law.

169.    On or about November 2021, Allstate Vehicle added AP4970 to the Estrada policy, which converted replacement cost value coverage to actual cash value coverage for labor, equipment rentals, overhead and profit, taxes, fees or similar charges. Requisite notice of this reduction of coverage was not provided to Estrada. Estrada did not request or authorize this reduction of coverage. Estrada did not receive any contractual consideration for this reduction of coverage.

170.    **AP4970** is a coverage-reducing endorsement, and therefore statutory written notice of material change was required to be provided by Allstate Vehicle to Estrada. Allstate Vehicle failed to send written notice. Allstate Vehicle delegated the task of sending renewal notices to its independent policy sales agents throughout the State of Texas, in violation of Tex. Ins. Code § 551.1055 (b).

171.    Estrada's agent M Dominguez Agency (218 W Nolana, McAllen TX 78504-2513; (956) 687-7231) sent Estrada a renewal notice on or about August 2020, for the policy which would renew in September 2021. Allstate Vehicle never sent a renewal notice to Estrada. Moreover, no statutorily-compliant notice of material change was ever provided to Estrada regarding **AP4970**. The renewal notice failed to comply with Texas State Law, as addressed,

*infra*. The renewal notice was over a dozen pages long. It included a cover letter, the policy's declarations, and several pages of attachments. The first page (cover letter) mentioned absolutely nothing about material changes being made to the policy. The **AP4970** endorsement was buried halfway through the renewal notice. This is the only notice of material change that Allstate Vehicle claims was sent to Estrada.

172.    Allstate Vehicle did not provide conspicuous notice of the material change to Estrada, in violation of Tex. Ins. Code § 551.1055(c)(1). Allstate Vehicle did not clearly indicate each material change being made to the policy on renewal to Estrada, in violation of Tex. Ins. Code § 551.1055 (c)(2).

172.    Allstate Vehicle did not provide a notice of material change written in plain language to Estrada, in violation of Tex. Ins. Code § 551.1055 (c)(3).

173.    Allstate Vehicle did not provide Estrada with written notice of material change no later than the 30th day before the policy renewal date, in violation of Tex. Ins. Code § 551.1055 (c)(4).

174.    The **AP4970** endorsement changed coverage for non-tangibles from replacement cost to actual cash value and is therefore explicitly subject to 28 TAC §§ 5.9750 (c)(1), 5.9751 (c), 5.9752 (a).

175.    Allstate Vehicle did not provide Estrada with written notice of material change that was conspicuous in violation of Tex. Ins. Code § 551.1055(c)(1).

176.    Allstate Vehicle did not provide Estrada with written notice of material change that was conspicuous as that term is defined in Texas Business and Commerce Code § 1.201(b), in violation of 28 TAC §§ 5.9751(a).

177.    Allstate Vehicle did not provide Estrada with written notice of material change

reflected on the first page of renewal notices (or conspicuous Texas that clearly indicates the location of the notice in the renewal offer), in violation of 28 TAC §§ 5.9751(b).

178.    Allstate Vehicle did not provide Estrada with written notice of material change that, using plain language, explained at a minimum what the terms "replacement cost" and "actual cash value" meant, in violation of 28 TAC §§ 5.9752(b).

179.    Allstate Vehicle did not provide Estrada with written notice of material change that, provided a statutorily-required definition of the term "depreciation," in violation of 28 TAC §§ 5.9752(c).

180.    Allstate Vehicle did not provide Estrada with written notice of material change that, included at least one plain-language example that showed the difference in dollar amounts between coverage before and after the material change, in violation of 28 TAC §§ 5.9752(d).

181.    With regard to every policyholder throughout the State of Texas, Allstate Vehicle reduced coverage without proper notice. Likewise, Allstate Vehicle offered no consideration (e.g. a reduction in premium) for the addition of these endorsements. These endorsements were not requested by Estrada or any other of Allstate Vehicle's policyholders. Summarily, Allstate Vehicle is believed to have slipped **AP4970** into every policyholder's policy in the same manner done to Estrada.

182.    Allstate Vehicle devised a scheme to defraud its policyholders, including Estrada, or to obtain money by means of false or fraudulent pretenses, representations, or promises. Allstate Vehicle failed to send statutory notices of material change to its policyholders, including Estrada, who in turn, believed their policies were being renewed with the same coverages. For the purposes of executing this scheme or attempting to do so, Allstate Vehicle engaged the United States Postal Service and knowingly caused non-compliant renewal notices to be delivered to its

policyholders. The acts were done in violation of 18 U.S. Code § 1341 ("Mail Fraud").

183.    Similarly, Allstate Vehicle devised a scheme for obtaining money by means of false or fraudulent pretenses, representations, or promises which was executed through the use of wire communication in interstate or foreign commerce. This wired communication included writings which were sent for the purpose of executing their scheme. Such wires were sent to Allstate Vehicle's policyholders throughout the State of Texas, including Estrada. The acts were done in violation of 18 U.S. Code § 1343 ("Wire Fraud").

184.    Many of Allstate Vehicle's policyholders had mortgagees with insurable interests in their insured properties. In many of the policies, financial institutions were explicitly named as "Additional Insureds." Allstate Vehicle knowingly executed a scheme to defraud these financial institutions, in violation of 18 U.S. Code § 1344 ("Bank Fraud"). Estrada specifically did not have a mortgage on the property at the time Allstate Vehicle slipped **AP4970** into the Estrada policy; however, hundreds of thousands of similarly situated policyholders throughout the State of Texas did.

185.    In consideration of Paras. 182-184, Estrada alleges, individually, and on behalf of others similarly situated, that Allstate Vehicle violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"). 18 U.S.C. § 1961–1968. Allstate Vehicle, in addition to the other Allstate Defendants conspired to slip AP4970 endorsements into every policyholders' policy throughout the State of Texas with no intent to provide requisite statutory notice. This conspiracy was furthered through the United States Postal Service and interstate wires through Allstate Vehicle's relationships with its statewide insurance agencies, most of which are captive agencies. Collectively, Allstate Vehicle, individually, and as a subsidiary of the Allstate Corporation and its relationship with independent captive agencies throughout the State of Texas was an enterprise

and collaborated for this common purpose, thereby committing Mail Fraud, Wire Fraud, and Bank Fraud. These racketeering activities proximately caused Estrada and others similarly situated to suffer financial injury.

186.    Allstate Vehicle also violated the Texas Insurance Code § 541.061 by misrepresenting insurance policies. Allstate Vehicle made untrue statements of material fact regarding Estrada's coverages, failed to state material facts, made misleading statements, made material misstatements of law, and failed to disclose facts required by law to be disclosed.

186.    Estrada brings forth this action individually and on behalf of others similarly situated under Texas Insurance Code § 541.151 for Allstate Vehicle's violations of Texas Insurance Code § 541.061.

187.    Estrada brings forth this action also for breach of contract individually, and on behalf of others similarly situated. Estrada maintained a contract of insurance with Allstate Vehicle. Allstate Vehicle committed material unilateral breaches of this contract by making material changes without any consideration tendered to Estrada, without Estrada's consent, and without requisite statutory notice.

188.    Estrada brings forth this action also for breach of the duty of good faith and fair dealing individually, and on behalf of others similarly situated. Allstate Vehicle, knowingly and with malice, reduced coverage for every policyholder in the State of Texas, including Estrada, without complying with state law. Allstate Vehicle knew that these endorsements were unenforceable because Allstate Vehicle failed to comply with statutes governing making material changes to homeowners' policies. Despite this, Allstate Vehicle urged – and continues to urge – across tens of thousands of claims throughout the state since 2021, including a claim filed by Estrada, that non-tangible elements of claims must be depreciated, with actual knowledge that

AP4970 was not lawfully added to these policies, including Estrada's policy. Across the sheer multitude of claims throughout the State of Texas since AP4970 was crafted, Allstate Vehicle have deprived thousands of homeowners millions of dollars, using the unenforceable AP4970 endorsement as a shield from paying what is contractually owed. Allstate Vehicle specifically deprived Estrada of such policy benefits.

189.    Estrada brings forth this action also for unjust enrichment individually, and on behalf of others similarly situated. Allstate Vehicle collected premiums at the time of renewal while simultaneously reducing, or attempting to reduce, coverages under those renewed policies without proper statutory notice resulting in a windfall of profits at their policyholders' expense. Allstate Vehicle specifically did this to Estrada, and did so to all other policyholders throughout the State of Texas.

190.    Estrada brings forth this action also for fraud individually, and on behalf of others similarly situated. Allstate Vehicle made false or misleading statements to its policyholders throughout the State of Texas, including Estrada, that their policies were being renewed with the same or similar coverages. Allstate Vehicle knowingly omitted requisite notice of reductions in coverage with the intent that their policyholders, including Estrada, would believe the coverages afforded were actually the same or similar to those coverages in place before renewal. Allstate Vehicle knew that it was required to give statutory notice of material changes and knew that the changes set forth in AP4970 were material. Allstate Vehicle intended to deceive their policyholders, including Estrada, by omitting requisite statutory notice. Estrada relied on these knowing misrepresentations to his detriment by agreeing to renew their policies and tender payment of premiums for coverages which had actually been reduced, thereby suffering damages, and other homeowners throughout the State of Texas similarly relied on such knowingly false

representations made by Allstate Vehicle. Moreover, Estrada, individually and on behalf of others similarly situated, later filed property damage claims and Allstate Vehicle wrongfully denied and/or underpaid his claim, relying in part on AP4970 as a basis for such underpayments.

## AMOUNT IN CONTROVERSY

191.    The amount in controversy with respect to the proposed class exceeds $5,000,000, exclusive of interest and costs. Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).

## CLASS ACTION ALLEGATIONS

192.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this lawsuit as a class action on behalf of themselves and on behalf of others similarly situated.  This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. Only to the extent it is a requirement under applicable law, the proposed class herein is ascertainable.

193.    The proposed class that Plaintiffs seek to represent is tentatively defined as follows:

*All Allstate Fire, Allstate Indemnity, Allstate Texas, and Allstate Vehicle policyholders (or their lawful assignees) who:*

*(1) Had property and casualty policies of insurance in effect in 2020 or 2021 which did not contain an **AP4970** Endorsement; and*

*(2) The subject policy of insurance was renewed in 2021 or 2022, with an **AP4970** Endorsement included.*

*The class period for the proposed class is the maximum time period as allowed by applicable law.*

194.    Plaintiffs reserve the right to amend the definition of the proposed class through discovery. The following persons are expressly excluded from the class: (1) Defendants and their subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; and (3) the Court to which this case is assigned and its staff.

195.    Plaintiffs and members of the putative class as defined all have Article III standing as all such persons and entities, at least initially, tendered premium payments at the time of policy renewal as consideration for what they, as reasonable persons, would have reasonably believed were for the same or similar coverages in place prior to the renewal. The Allstate Defendants' knowing violation of statutory renewal notice law deprived all such putative class members of coverages to which they were entitled, or alternatively, premium payments tendered

despite the concealed reductions of coverage. All putative class members, at minimum, have incurred damages in the form of the lost "time value" of money during the period of withholding, *i.e.*, statutory or common law prejudgment interest on the amounts improperly withheld, for the time period of withholding.

196.    The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiffs reasonably believe hundreds of thousands of people geographically dispersed across Texas have been damaged by Defendants' actions. The names and addresses of the members of the proposed class are readily identifiable through records maintained by Defendants or from information readily available to Defendants. At this time, it is believed that between 500,000 to 1,500,000 policies were affected, with in excess of 1,000,000 individual putative class members.

197.    The relatively small amounts of damage suffered by most members of the proposed class make filing separate lawsuits by individual members economically impracticable.

198.    Defendants have acted on grounds generally applicable to the proposed class in that Defendants slipped the same endorsement into every policy in the same manner (i.e. without complying with requisite statutes) at the time of policy renewals between 2021 and 2022. It is also reasonable to expect Defendants will continue to urge the enforceability of AP4970 endorsements in the putative class members' policies (to the extent many of them are still in effect), thereby withholding depreciation on non-tangible components of property damage claims to reduce the amount they pay to its insureds under these policies absent this lawsuit. Likewise, Defendants continue to collect premiums from all putative class members (to the extent the policies remain in effect) without any consideration tendered for the reductions of total coverage.

199.    Common questions of law and fact exist as to all members of the proposed class

and predominate over any questions affecting only individual members. The questions of law and

fact common to the proposed class include, but are not limited to:

1.  The date and manner Defendants provided statutory notices of material change to their insureds (Plaintiffs and members of the proposed class) before renewing policies after AP4970 was approved for usage by TDI;

2.  Whether any insured (Plaintiffs and members of the proposed class) requested the AP4970 endorsement from any Defendant;

3.  Whether any insured (Plaintiffs and members of the proposed class) received any consideration for the AP4970 endorsement being added to their policy;

4.  Whether Defendants complied with Tex. Ins. Code Ch. 551 or 28 TAC 5.9750-5.9752 when adding AP4970 to policies it renewed between 2021 through 2022 which were held by Plaintiffs and members of the proposed class;

5.  Whether the addition of AP4970 without proper notice violated policyholders' contractual rights;

6.  Whether Defendants' conduct constitutes fraud and racketeering;

7.  Whether Plaintiffs and members of the proposed class suffered damages as a result of any unlawful addition of AP4970 to their policy; and

8.  Whether Plaintiffs and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Declaratory Judgment Act, regarding the enforceability of AP4970.

200.    Plaintiffs' claims are typical of the claims of the proposed class members, as they

are similarly affected by the customs and practices alleged herein. Further, Plaintiffs' claims are

typical of the claims of the proposed class members because the claims arose from the

same practices and course of conduct that give rise to the claims of the members of the proposed

class and are based on the same factual and legal theories. Plaintiffs are not different in any

material respect from any other member of the proposed class.

201.    Plaintiffs and their counsel will fairly and adequately protect the interests of the

members of the proposed class. Plaintiffs' interests do not conflict with the interests of

the proposed class they seek to represent. Plaintiffs have retained lawyers who are competent and experienced in mass tort and insurance litigation. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the members of the proposed class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the proposed class while recognizing the risks associated with litigation. Plaintiffs reserve the right to have unnamed class members join them in seeking to be a class representative.

202.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all proposed members of the proposed class in one action is impracticable and prosecuting individual actions is not feasible.[25] The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Individual litigation could result in inconsistent adjudications of common issues of law and fact.

---

[25] Plaintiffs also note Defendants opposed a statewide consolidation of 78 declaratory actions into a Multi-District Litigation State Court. Ultimately, Plaintiffs' Motion to Transfer was denied by the Texas Supreme Court's MDL Panel. *See* MDL 23-0642 *In Re Allstate Insurance Company Policy Endorsement Litigation*. In the MDL cases, and those which followed, hundreds of Palker Law Firm clients with underlying property damage claim disputes have alleged declaratory actions pertaining to the enforceability of AP4970 and sought discovery pertinent to those declaratory actions. The sheer volume of briefing and discovery hearings alone has proven these issues to be unfeasible to pursue on an individual basis. Moreover, all such suits have involved underlying property damage claim disputes. This complaint seeks to create a putative class consisting of members who have not even filed property damage claims, with damage models determined in consideration of premium payments tendered for coverages that were slashed without notice (i.e. "underwriting fraud" as opposed to mishandling of claims).

203.    In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiffs and members of the proposed class. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

204.    Questions of law or fact common to Plaintiffs and members of the proposed class, including those identified above, predominate over questions affecting only individual members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individuals would require. Further, the monetary amount due to many individual members of the proposed class is likely to be relatively small, and the burden and expense of individual litigation would make it difficult or impossible for individual members of the proposed class to seek and obtain relief. On the other hand, a class action will serve important public interests  by  permitting consumers harmed by the unlawful practices to effectively pursue recovery of the sums owed to them, and by deterring further unlawful conduct. The public interest in protecting the rights of consumers favors disposition of the controversy in the class action form.

205.    Class certification is further warranted because Defendants have acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

206.    Plaintiffs may seek, in the alternative, certification of issues classes. Rule 23(c)(4)

provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

## CAUSES OF ACTION

### A.    MOTION FOR STAY

207.    As stated, *supra*., each Plaintiff has an underlying property damage claim dispute with a respective Allstate Defendant. Each Plaintiff has an ongoing lawsuit against a respective Allstate Defendant alleging causes of action including Breach of Contract, Insurance Code Violations (Ch. 541 & 542), Breach of Contract, Fraud and Conspiracy to Commit Fraud, Breach of the Duty of Good Faith and Fair Dealing, and Violations of the Texas Deceptive Trade Practices Act.[26]

208.    Each Plaintiff also asserted declaratory actions pertaining to the Allstate Defendants' conduct pertaining to AP4970 endorsements in their underlying state actions.

209.    Each Plaintiff seeks a stay of the underlying state actions. As pled herein, a class is best suited to address the AP4970 claims. However, Plaintiffs would seek to lift this Court's stay and potential settle or try their underlying property damage claim disputes after moving for class certification.[27]

210.    Each Plaintiff does not assert individual causes of action herein, except as

---

[26] *Garcia v. Allstate Fire and Casualty Insurance Company*, No. 2024CVF000023L1 (Webb Cty. Ct. 1); *Pena v. Allstate Indemnity Company*, No. CL-25-0922-F (Hidalgo Cty. Ct. 6); *Reyna v. Allstate Texas Lloyds*, No. CL-24-1486-G (Hidalgo Cty. Ct. 7); *Estrada v. Allstate Vehicle and Property Insurance Company*, No. CL-25-0259-G (Hidalgo Cty. Ct. 7).

[27] It is generally true that a "class action becomes moot when the personal claims of all named plaintiffs are satisfied and no class has [yet] been certified." *Murray v. Fid. Nat. Fin., Inc.*, 594 F.3d 419, 421 (5th Cir. 2010) (citation omitted). However, "a suit brought as a class action should not be dismissed for mootness upon tender to the named plaintiffs of their personal claims ... when ... there is pending ... a timely filed and diligently pursued motion for class certification." *Id*. at 421–22 (quoting *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1051 (5th Cir. Unit A July 1981)). To the contrary, the Fifth Circuit has "expressed concern for defendant-induced mootness in the class action context where defendants may attempt to 'pick off' individual plaintiffs before class certification '[b]y tendering to the named plaintiffs the full amount of their personal claims each time suit is brought as a class action.'" *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 315 (5th Cir. 2015) (quoting *Zeidman* 651 F.2d at 1050). This so-called "picking off" exception "originates from the more general exception that a defendant's voluntary cessation of its illegal conduct does not moot a case unless it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Sos v. State Farm Mut. Auto. Ins. Co.*, No. 21-11769, 2023 WL 5608014, at *10 (11th Cir. Aug. 30, 2023) (internal quotation marks omitted) (quoting *West Virginia v. Env't Prot. Agency*, 597 U.S. 697, 720 (2022)).

specifically pled individually, and *also* on behalf of all others similarly situated. Stated differently, all causes of action pled herein are class action causes of action.

### B.    COUNT 1: RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"). 18 U.S.C. § 1961–1968

211.    Plaintiffs restate and incorporate by reference all preceding allegations.

### I.    The RICO Enterprise

212.    Defendants Allstate Fire, Allstate Indemnity, Allstate Texas, and Allstate Vehicle were all part of an enterprise. As subsidiaries of the larger Allstate Corporation, these Defendants, in addition to captive insurance agencies throughout the State of Texas engaged in a pattern of racketeering which caused Plaintiffs and others similarly situated injury and damages.

213.    Defendants Allstate Fire, Allstate Indemnity, Allstate Texas, and Allstate Vehicle (collectively, "Allstate") formed and operated an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4).

214.    The enterprise consisted of:

215.    Allstate's parent and subsidiary entities, which coordinated efforts to implement AP4970 across all Texas homeowners' policies.

216.    Allstate's captive insurance agents, who were used to distribute fraudulent renewal notices and misrepresent policy coverage.

217.    Third-party administrators and internal claims adjusters, who knowingly applied AP4970 to reduce claim payouts.

218.    The enterprise had a common purpose: to increase Allstate's profits by systematically reducing coverage while continuing to collect the same or higher premiums from policyholders.

219.    The enterprise functioned as a continuing unit, with Defendants coordinating

through corporate policies, misleading renewal notices, and fraudulent claims-handling procedures.

220.    Defendants exerted control over the enterprise through:

1.    Mandating AP4970's inclusion in every renewed policy.

2.    Disseminating false and misleading renewal materials that omitted material coverage changes.

3.    Training agents to conceal the nature of AP4970 when discussing renewals with policyholders.

4.    Directing claims adjusters to apply AP4970's depreciation formula to reduce settlements.

## II.    Predicate Acts of Racketeering

221.    Defendants engaged in a pattern of racketeering activity through multiple acts of mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), and bank fraud (18 U.S.C. § 1344).

*Mail Fraud (18 U.S.C. § 1341):*

222.    Defendants and their co-conspirators knowingly sent fraudulent renewal notices to policyholders via U.S. mail, falsely implying that policy terms remained substantially the same while secretly incorporating AP4970.

223.    These mailings were part of a coordinated scheme to deceive policyholders into believing their coverage was unchanged.

224.    Policyholders received no statutory notice as required under Tex. Ins. Code §§ 551.1055 and 2002.201, or 28 TAC 5.9750-5.9752, making the omission itself fraudulent.

*Wire Fraud (18 U.S.C. § 1343):*

225.    Defendants transmitted electronic communications, including emails and online

policy updates, that falsely represented renewal terms.

226.    Allstate's website and customer portals failed to disclose AP4970's impact on claims handling, further misleading policyholders.

227.    Defendants used interstate wires to transmit fraudulent training materials to agents, instructing them not to disclose the reduction in coverage, and/or by omission, detailing how agents were to provide renewal notices to all policyholders (i.e. by slipping AP4970 into the renewal notice packages without complying with policy renewal statutes)

*Bank Fraud (18 U.S.C. § 1344):*

228.    Defendants falsely represented the nature and extent of policy coverage to mortgage lenders and financial institutions that maintained an insurable interest in properties covered by Allstate policies.

229.    Mortgage companies were listed as named insureds on policies that no longer provided the originally agreed-upon Replacement Cost Value (RCV), without proper disclosure.

230.    Defendants' conduct caused mortgage lenders to believe their collateral (insured homes) had greater coverage than actually provided, placing them at substantial financial risk in case of loss.

231.    By misrepresenting policy terms to lenders, Defendants engaged in a fraudulent scheme to obtain money or assets from financial institutions under false pretenses.

232.    The predicate acts of mail, wire, and bank fraud were repeated hundreds of thousands of times, affecting an estimated 500,000 to 1,500,000 individual policies across Texas.

233.    The fraudulent scheme of slipping AP4970 into renewed policies without requisite notice lasted for over a year after the Texas Department of Insurance approved the AP4970 form for usage.

234.    More importantly, the fraudulent scheme had continuity and remains ongoing, as Defendants continue to apply AP4970 to these same renewed policies without disclosure, thereby impacting policyholders throughout the State of Texas – both by virtue of charging excessive premiums which make no adjustments for these coverage-reducing endorsements, and by applying these coverage-reducing endorsements to underlying property damage claims, thereby depriving policyholders of benefits to which they are entitled in their most desperate times of need.

### III.    Proximate Causation & Injury

235.    Plaintiffs and the Class suffered direct financial harm as a result of Defendants' RICO violations.

236.    Plaintiffs were fraudulently induced into renewing policies under false pretenses and suffered substantial financial loss when Allstate improperly applied AP4970 to reduce or deny claim payments.

237.    Plaintiffs and the Class lost the benefit of their original policies, were misled into paying inflated premiums, and incurred out-of-pocket expenses due to underpaid claims.

238.    The fraudulent scheme directly caused these damages—but for Defendants' misrepresentations, Plaintiffs would not have renewed their policies or would have sought alternative coverage.

### IV.    RICO Conspiracy (18 U.S.C. § 1962(d))

239.    Defendants knowingly conspired to conduct and participate in the racketeering enterprise in violation of 18 U.S.C. § 1962(d).

240.    Defendants entered into agreements to:

1.    Implement AP4970 without notice to maximize profits.

2.    Distribute misleading renewal materials that concealed material policy

changes.

3.    Train agents and adjusters to misrepresent AP4970's effect on claims
payments.

241.    Each Defendant knew of the unlawful nature of the scheme and acted to further it,
making them jointly liable under 18 U.S.C. § 1962(d). The Texas Department of Insurance, upon
approving AP4970 for usage specifically reminded Defendants to comply with all statutory notice
of material change requirements. Defendants callously disregarded TDI's instructions and
knowingly violated Texas law with the intent that their policyholders would detrimentally rely
on the non-disclosure of material policy changes.

### V.    Relief Sought

242.    Plaintiffs, individually, and on behalf of those similarly situated therefore seek:

1.    Treble damages under 18 U.S.C. § 1964(c) for all financial losses suffered
due to Defendants' racketeering activity.

2.    Injunctive relief prohibiting Defendants from continuing to apply AP4970
without proper disclosure.

3.    Disgorgement of all unlawfully obtained premiums.

4.    Attorneys' fees and costs pursuant to RICO's fee-shifting provision.

5.    Any other relief the Court deems just and appropriate.

### C.    COUNT 2: VIOLATIONS OF TEXAS INSURANCE CODE (CH. 551, SUPP. 28 TEX. ADMIN. CODE 5.9750 – 5.9752; CH. 541)

243.    Plaintiffs restate and incorporate by reference all preceding allegations.

### I.    Defendants' Violations of Tex. Ins. Code Ch. 551 and 28 TAC 5.9750 – 5.9752

244.    AP4970 is a coverage-reducing endorsement, and therefore statutory written
notice of material change was required to be provided by Defendants to their policyholders.

Defendants failed to send written notice. Defendant delegated the task of sending renewal notices to their independent policy sales agents throughout the State of Texas, in violation of Tex. Ins. Code § 551.1055 (b). The renewal notices failed to comply with Texas State Law.

245.   The Allstate Defendants did not provide conspicuous notice of the material change to their policyholders, in violation of Tex. Ins. Code § 551.1055 (c)(1).

246.   The Allstate Defendants did not clearly indicate each material change being made to the policy on renewal to their policyholders, in violation of Tex. Ins. Code § 551.1055 (c)(2).

247.   The Allstate Defendants did not provide a notice of material change written in plain language to their policyholders, in violation of Tex. Ins. Code § 551.1055 (c)(3).

248.   The Allstate Defendants did not provide their policyholders with written notice of material change no later than the 30th day before the policy renewal date, in violation of Tex. Ins. Code § 551.1055 (c)(4).

249.   The AP4970 endorsement changed coverage for non-tangibles from replacement cost to actual cash value and is therefore explicitly subject to 28 TAC §§ 5.9750 (c)(1), 5.9751 (c), 5.9752 (a).

250.   The Allstate Defendants did not provide their policyholders with written notice of material change that was conspicuous in violation of Tex. Ins. Code § 551.1055(c)(1).

251.   The Allstate Defendants did not provide their policyholders with written notice of material change that was conspicuous as that term is defined in Texas Business and Commerce Code § 1.201(b), in violation of 28 TAC §§ 5.9751(a).

252.   The Allstate Defendants did not provide their policyholders with written notice of material change reflected on the first page of renewal notices (or conspicuous Texas that clearly indicates the location of the notice in the renewal offer), in violation of 28 TAC §§ 5.9751(b).

253. The Allstate Defendants did not provide their policyholders with written notice of material change that, using plain language, explained at a minimum what the terms "replacement cost" and "actual cash value" meant, in violation of 28 TAC §§ 5.9752(b).

254. The Allstate Defendants did not provide their policyholders with written notice of material change that, provided a statutorily-required definition of the term "depreciation," in violation of 28 TAC §§ 5.9752(c).

255. The Allstate Defendants did not provide their policyholders with written notice of material change that, included at least one plain-language example that showed the difference in dollar amounts between coverage before and after the material change, in violation of 28 TAC §§ 5.9752(d).

256. With regard to every policyholder throughout the State of Texas, the Allstate Defendants reduced coverage without proper notice. Likewise, the Allstate Defendants offered no consideration (e.g. a reduction in premium) for the addition of these endorsements. These endorsements were not requested by the Allstate Defendants' policyholders.

257. Defendants violated each of these statutory provisions when renewing each Plaintiff's policy in a uniform and consistent manner vis-à-vis slipping the AP4970 endorsement into policy renewal packages with express intent that policyholders would not notice these changes, thereby reducing coverage for years to come.

**B.    Defendants' Violations of Tex. Ins. Code Ch. 541**

258. Texas Insurance Code § 541.061 specifically forbids insurers from making untrue statements of material fact regarding Plaintiffs' coverages, failing to state material facts regarding policy coverages, making misleading statements about policy coverages, making material misstatements of law as they pertain to policy coverages, and failing to disclose facts required by

law to be disclosed regarding policy coverages.

251.    Defendants engaged violated Texas Insurance Code § 541.061 by slipping AP4970 endorsements into Plaintiffs' policies, in addition to the policies of those similarly situated, with the intent that AP4970's language control future coverage decisions in the event claims were filed for property damages. AP4970 was unlawfully added to each Plaintiffs' policy, in addition to all other policyholders throughout Texas, and therefore it constitutes a policy cancelation and "has no effect." Notwithstanding, Defendants have misrepresented globally throughout Texas that AP4970 is a binding reduction of policy benefits to which their insureds are entitled on claims, and otherwise – in the absence of claims being filed – that it still is a binding coverage under the terms of the policy, despite never being added to the policy in accordance with state law.

### III.    Proximate Causation & Injury

252.    As a direct and proximate result of Defendants' statutory violations, Plaintiffs and the Class suffered economic damages, including but not limited to:

1.    Overpayment of premiums for policies that no longer provided full RCV coverage for non-tangibles.

2.    Underpaid claims due to improper depreciation calculations.

3.    Out-of-pocket repair expenses resulting from denied or reduced claims.

4.    Loss of benefit of the bargain, as Plaintiffs paid for coverage that was secretly reduced.

253.    But for Defendants' failure to comply with Texas Insurance Code § 551.1055, § 541.061, and 28 Tex. Admin. Code § 5.9751, Plaintiffs and the Class would have been able to make informed decisions about their coverage and could have avoided financial harm.

254.    Defendants' actions were knowing and intentional, justifying the award of statutory damages, including exemplary damages and treble damages as permitted under Texas law.

## IV.    Relief Sought

255.    WHEREFORE, Plaintiffs and the Class request:

1.    Actual damages sustained due to Defendants' statutory violations.

2.    Statutory penalties and treble damages as permitted under Tex. Ins. Code § 541.152.

3.    Restitution of premiums paid for policies under false pretenses.

4.    Injunctive relief preventing Defendants from continuing to apply AP4970 without providing the required disclosures.

5.    Attorneys' fees, costs, and pre-judgment interest as permitted by law.

6.    Any other relief the Court deems just and appropriate.

## D.    COUNT 3: BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

256.    Plaintiffs restate and incorporate by reference all preceding allegations.

257.    A special relationship exists between an insurer and its insureds arising out of the parties' unequal bargaining power and the exclusive control that the insurer exercises over the processing of claims and the canceling of insurance contracts. *Union Bankers Insurance Co. v. Shelton*, 889 S.W.2d 278, 283 (Tex. 1994) (policy cancellation); *Arnold v. National County Mutual Fire Insurance Co.*, 725 S.W.2d 165, 167 (Tex. 1987) (claim denial). This duty is nondelegable. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 698 (Tex. 1994).

258.    Insurers can be found to have breached the duty of good faith and fair dealing by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim

when the insurer's liability has become reasonably clear, or by refusing to pay a claim without conducting a reasonable investigation of the claim.

259.    Defendants maintained special relationships with Plaintiffs individually, as well as others similarly situated and owed a legal duty to act in good faith by promptly, fairly, and equitably paying claims and conducting reasonable investigations of claims. Defendants have breached this duty owed to all policyholders throughout the state who have filed claims, by leveraging AP4970 as a means of depriving insureds payments that are owed, while Defendants have actual knowledge that AP4970 was not lawfully added to policies and therefore has no effect. Defendants acted in a manner that was consistent and widespread between all policyholders throughout the state. Defendants failed to act honestly or fairly in the renewing of Plaintiffs or other policyholders' policies, thereby depriving their policyholders of contractual benefits and over-charging premiums for reduced coverages. Defendants' conduct was unreasonable and grossly unfair to policyholders who maintained no bargaining power and were actively misled by Defendants' omissions of notice and material misrepresentations regarding the enforceability of AP4970 endorsements. Plaintiffs suffered injury by losing the full value of their insurance policies without proper disclosure, being stripped away of contractual rights to which they were entitled.

260.    WHEREFORE, Plaintiffs and the Class request:

1.    Compensatory damages for financial losses caused by Defendants' bad faith conduct.

2.    Exemplary damages due to Defendants' intentional and reckless misconduct.

3.    Restitution of wrongfully denied claim amounts.

4.      Injunctive relief prohibiting Defendants from continuing to apply AP4970 without full and fair disclosure.

5.      Attorneys' fees, costs, and pre-judgment interest as permitted by law.

6.      Any other relief the Court deems just and appropriate.

### E.      COUNT 4: BREACH CONTRACT

261.    Plaintiffs restate and incorporate by reference all preceding allegations.

### I.      Existence of a Valid Contract

262.    Plaintiffs and the Class entered into valid and enforceable insurance contracts with Defendants, whereby Defendants agreed to provide homeowners' insurance coverage in exchange for the payment of premiums.

263.    The terms of these contracts provided for Replacement Cost Value (RCV) coverage for non-tangibles including labor, equipment rentals, overhead and profit, taxes, fees and similar charges as a matter of law prior to the addition of AP4970.

264.    Plaintiffs and the Class fulfilled all contractual obligations, including the timely payment of premiums.

### II.      Defendants' Breach of the Insurance Contracts

265.    Defendants breached these contracts by unilaterally modifying coverage through the introduction of the AP4970 endorsement, which changed the calculation of claim payments for non-tangibles from RCV to Actual Cash Value (ACV) without the consent or consideration of Plaintiffs and the Class.

266.    Defendants' breaches occurred in the following ways:

1.      Unilateral alteration of policy terms by incorporating AP4970 without policyholders' knowledge or approval.

2.    Failure to provide the full replacement cost benefits that Plaintiffs and the Class bargained for in their original contracts.

3.    Systematic underpayment of claims based on AP4970's improper depreciation of non-tangible components, such as labor and contractor overhead.

4.    Failing to adhere to Texas insurance laws and regulations requiring insurers to provide full disclosure of material changes to coverage.

267.    Plaintiffs and the Class reasonably expected that the coverage for which they paid premiums would remain unchanged unless explicitly agreed upon.

268.    By failing to provide full replacement cost coverage and instead reducing benefits without consideration, Defendants breached their contractual obligations.

269.    Defendants had a duty to comply with Texas law if material changes were to be made to Plaintiffs' policies at the time of renewal, but Defendants opted not to comply with these statutory requirements.

### III.    Proximate Causation & Injury

270.    As a direct and proximate result of Defendants' breaches of contract, Plaintiffs and the Class suffered significant financial harm, including:

1.    Reduced or denied claim payments due to improper application of AP4970.

2.    Increased out-of-pocket repair costs that should have been covered under the original policy terms.

3    Overpayment of premiums for diminished coverage that was not properly disclosed.

4.      Loss of the benefit of their original contracts, as the promised RCV coverage was effectively eliminated.

271.    But for Defendants' breaches, Plaintiffs and the Class would have received full insurance benefits as originally contracted, or they would have had the opportunity to seek alternative coverage from another insurer.

## IV.      Relief Sought

272.    WHEREFORE, Plaintiffs and the Class request:

1.      Compensatory damages for financial losses suffered due to Defendants' contractual breaches.

2.      Specific performance or reformation of policies to restore RCV benefits.

3.      Restitution for unlawfully retained premiums collected for coverage that was improperly altered.

4.      Pre- and post-judgment interest as permitted by law.

5.      Attorneys' fees and costs under applicable Texas contract law.

6.      Any other relief the Court deems just and appropriate.

## F.      COUNT 5: UNJUST ENRICHMENT

273.    Plaintiffs restate and incorporate by reference all preceding allegations.

## I.      Defendants' Wrongful Conduct

274.    Defendants have been unjustly enriched by improperly collecting and retaining insurance premiums from Plaintiffs and the Class while simultaneously reducing coverage benefits without proper disclosure.

275.    By unilaterally modifying policies through AP4970, Defendants continued charging policyholders for full replacement cost coverage (RCV) for non-tangible components

of claims while secretly reducing their claim payments to actual cash value (ACV) for these components.

276.    Defendants deceived Plaintiffs and the Class into believing they maintained full coverage, despite the material changes caused by AP4970.

277.    As a result, Defendants received premium payments under false pretenses, as policyholders were not provided the coverage for which they paid.

## II.    Retention of Benefits Would Be Unjust

278.    Under Texas law, a party is unjustly enriched when it receives a benefit unfairly, at another's expense, and under circumstances that would make it inequitable to retain that benefit.

279.    Here, Defendants were unjustly enriched because:

1.    They collected full premiums for policies that no longer provided full coverage.

2.    They failed to notify policyholders about AP4970's material impact on coverage.

3.    They denied or underpaid legitimate claims, forcing Plaintiffs and the Class to pay out-of-pocket repair costs.

4.    They reduced their own financial risk and liability while maintaining revenue from unsuspecting policyholders.

5.    Retaining these unlawfully obtained premiums without restoring policy benefits or compensating policyholders for losses is inequitable and unjust.

280.    Defendants' actions violated fundamental principles of equity, entitling Plaintiffs and the Class to restitution.

### III.   Proximate Causation & Injury

281.   As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and the Class suffered significant financial harm, including:

    1.   Loss of insurance benefits they reasonably expected to receive.

    2.   Overpayment of premiums for diminished coverage.

    3.   Out-of-pocket expenses for repairs that should have been covered.

    4.   Deprivation of the ability to seek alternative coverage with another insurer.

282.   But for Defendants' wrongful conduct, Plaintiffs and the Class would not have paid for policies that failed to provide full RCV coverage.

283.   Equity demands that Defendants disgorge the improperly retained premiums and compensate policyholders for their losses.

### IV.   Relief Sought

284.   WHEREFORE, Plaintiffs and the Class request:

    1.   Restitution of all unlawfully retained premiums paid under false pretenses.

    2.   Disgorgement of all profits derived from the improper application of AP4970.

    3.   Compensatory damages to restore Plaintiffs and the Class to the position they would have been in had Defendants not improperly reduced coverage.

    4.   Injunctive relief prohibiting Defendants from continuing to apply AP4970 without full and fair disclosure.

    5.   Attorneys' fees, costs, and pre-judgment interest as permitted by law.

    6.   Any other relief the Court deems just and appropriate.

### G.   COUNT 6: FRAUD & CONSPIRACY TO COMMIT FRAUD

285.    Plaintiffs restate and incorporate by reference all preceding allegations.

## I.    Defendants' Fraudulent Conduct

286.    Defendants engaged in a fraudulent scheme by knowingly and intentionally misrepresenting the terms and conditions of homeowners' insurance policies through the undisclosed application of AP4970.

287.    Under Texas law, fraud occurs when: (1) A party makes a material misrepresentation; (2) The representation is false and made knowingly or recklessly; (3) The party intends for the plaintiff to rely on the misrepresentation; (4) The plaintiff relies on the misrepresentation to their detriment; (5) The plaintiff suffers actual damages as a result.

288.    Defendants made multiple material misrepresentations and omissions, including:

1.    Falsely implying in renewal notices that policy terms remained the same while secretly introducing AP4970.

2.    Failing to disclose AP4970's impact on coverage, including the shift from Replacement Cost Value (RCV) to Actual Cash Value (ACV).

3.    Misrepresenting coverage limits and benefits to policyholders and mortgage lenders.

4.    Training agents to mislead policyholders regarding the true nature of the coverage changes.

299.    Defendants' fraudulent actions were knowing, intentional, and designed to deceive policyholders into continuing to pay premiums for coverage that had been secretly diminished.

300.    Plaintiffs and the Class reasonably relied on Defendants' false representations, believing their policies continued to provide full coverage.

301.    Had Defendants properly disclosed the effects of AP4970, Plaintiffs and the Class would have sought alternative policies or taken action to protect their coverage.

302.    As a direct and proximate result of Defendants' fraud, Plaintiffs and the Class suffered substantial financial harm, including:

    1.    Underpaid claims due to improper depreciation calculations.

    2.    Out-of-pocket expenses for repairs that should have been covered.

    3.    Overpayment of premiums for diminished coverage.

    4.    Loss of ability to make informed decisions about their insurance policies.

## II.    Conspiracy to Commit Fraud

303.    Defendants knowingly and willfully conspired with one another to commit fraud against Plaintiffs and the Class.

304.    A civil conspiracy exists when: (1) Two or more parties agree to accomplish an unlawful purpose or a lawful purpose by unlawful means; (2) One or more of the parties commits an overt act in furtherance of the agreement; (3) The plaintiff suffers damages as a result.

305.    Defendants engaged in a conspiracy by working together to implement AP4970 without disclosure, ensuring that all subsidiaries followed the fraudulent scheme.

306.    Overt acts in furtherance of the conspiracy included:

    1.    Issuing misleading renewal notices that omitted AP4970's impact.

    2.    Instructing agents and adjusters to conceal policy changes.

    3.    Manipulating claims payments to reduce settlement amounts without policyholder knowledge.

    4.    Coordinating efforts among Allstate's subsidiaries to standardize the deception across all policyholders.

307.    Each Defendant knew of the fraudulent nature of the scheme and took actions to further it, making them jointly and severally liable for all damages resulting from their fraudulent conduct.

### III.    Proximate Causation & Injury

308.    As a direct and proximate result of Defendants' fraud and conspiracy to commit fraud, Plaintiffs and the Class suffered substantial financial harm, including:

1.    Economic losses from underpaid or denied claims.

2.    Overpayment of premiums for reduced coverage.

3.    Out-of-pocket expenses for uncovered damages.

4.    Loss of contractually promised insurance benefits.

309.    But for Defendants' fraudulent misrepresentations and omissions, Plaintiffs and the Class would have taken alternative actions to protect their financial interests.

310.    Defendants' conduct was malicious, intentional, and reckless, justifying an award of exemplary damages.

### IV.    Relief Sought

311.    WHEREFORE, Plaintiffs and the Class request:

1.    Compensatory damages for all losses caused by Defendants' fraudulent misrepresentations.

2.    Exemplary (punitive) damages due to Defendants' intentional misconduct.

3.    Disgorgement of all profits derived from fraudulent conduct.

4.    Rescission or reformation of policies to restore full coverage.

5.    Injunctive relief prohibiting Defendants from continuing deceptive insurance practices.

6.    Attorneys' fees, costs, and pre-judgment interest as permitted by law.

7.    Any other relief the Court deems just and appropriate.

**H.    COUNT 7: DECLARATORY JUDGMENT AND RELIEF**

312.    Plaintiffs restate and incorporate by reference all preceding allegations.

**I.    Nature of the Controversy**

313.    Plaintiffs and the Class incorporate all prior allegations as if fully set forth herein.

314.    An actual and justiciable controversy exists between Plaintiffs and Defendants regarding the enforceability and legality of the AP4970 endorsement and the misleading renewal notices and policy modifications implemented by Defendants.

315.    Plaintiffs and the Class contend that Defendants' introduction of AP4970 and its application to insurance policies without proper disclosure violates Texas law, public policy, and the contractual rights of policyholders. Plaintiffs and the putative class do not necessarily allege that AP4970 is unenforceable where it was included in new policies sold to policyholders in Texas; however with regard to renewed policies that had AP4970 slipped in between 2021 and 2022, this modification was unlawful and therefore the AP4970 endorsement is not enforceable.

316.    Defendants, on the other hand, continue to enforce and apply AP4970 to deny and underpay claims, asserting that such modifications were lawfully implemented.

317.    Because Defendants refuse to acknowledge their wrongdoing or restore policyholders to their rightful coverage terms, Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to declare the rights and legal relations of parties, regardless of whether further relief is or could be claimed.

318.    A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

319.    Plaintiffs and members of the proposed class have all complied with all relevant conditions precedent in their contracts.

320.    Plaintiffs seek, individually and on behalf of the proposed class, a declaration that the applicable insurance contracts

## II.    Declaratory Relief Sought

321.    Plaintiffs and the Class request that the Court declare the rights and obligations of the parties, specifically:

(a)    That AP4970 was unlawfully added to insurance policies without proper notice, in violation of Texas Insurance Code §§ 551.1055 and 2002.201, and 28 Tex. Admin. Code § 5.9751.

(b)    That Defendants' failure to notify policyholders of material coverage changes renders AP4970 void and unenforceable.

(c)    That Defendants' conduct constitutes a breach of contract and violates Texas consumer protection laws.

(d)    That Plaintiffs and the Class are entitled to full Replacement Cost Value (RCV) coverage under their original policies with regard to non-tangible components of property damage claims, without the reductions imposed by AP4970.

(e)    That Defendants must reform all affected policies to restore the coverage that Plaintiffs and the Class initially purchased.

322.    Plaintiffs and the Class further seek an order enjoining Defendants from committing any of the following:

(a)    Continuing to enforce AP4970 without full and proper disclosure in policies that were subject to the 2021-2022 renewals made the basis of this suit;

(b)     Issuing misleading renewal notices that fail to disclose material coverage reductions;

(c)     Applying AP4970 retroactively to deny or reduce pending claims.

323.    A declaratory judgment is necessary to resolve this controversy and to prevent further harm to policyholders who remain subject to Defendants' unlawful practices. Plaintiffs and members of the proposed class have and will continue to suffer injuries.

324.    Plaintiffs further seek, individually and on behalf of the proposed class, any and all other relief available under the law arising out of a favorable declaration.

## **JURY DEMAND**

325.   Plaintiffs hereby demand a trial by jury.

## **PRAYER FOR RELIEF**

326. WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court:

A.    Enter an order certifying this action as a class action, appointing Plaintiffs as the representatives of the class, and appointing Plaintiffs' attorneys as counsel for the class;

B.    Enter a declaratory judgment, declaring that:

(a)    That AP4970 was unlawfully added to insurance policies without proper notice, in violation of Texas Insurance Code §§ 551.1055 and 2002.201, and 28 Tex. Admin. Code § 5.9751.

(b)    That Defendants' failure to notify policyholders of material coverage changes renders AP4970 void and unenforceable.

(c)    That Defendants' conduct constitutes a breach of contract and violates Texas consumer protection laws.

(d)    That Plaintiffs and the Class are entitled to full Replacement Cost Value (RCV) coverage under their original policies with regard to non-tangible components of property damage claims, without the reductions imposed by AP4970.

(e)    That Defendants must reform all affected policies to restore the coverage that Plaintiffs and the Class initially purchased.

C.    Enter a declaration, and any preliminary and permanent injunction and equitable relief against Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the policies, practices, customs, and usages complained of herein, as may be allowed by law;

D.    Enter an order that Defendants specifically perform and carry out policies, practices, and programs that remediate and eradicate the effects of their past and

present practices complained of herein;

E.      Award damages in accordance with the cause(s) of action alleged herein; and

F.      Award attorneys' fees, costs, expenses, and disbursements incurred herein by Plaintiffs and members of the proposed class as may be allowed by law, including but not limited to amounts available under the common fund doctrine;

327.  Plaintiffs, individually, and on behalf of those similarly situated pray that this Court grant such further and additional relief at law or at equity as the Court deems necessary and proper.

Date Signed: March 13, 2025                    Respectfully submitted,

By: /s/ *Jason Palker*
**Jason Palker**
Fed. ID No. 3633290
**PALKER LAW FIRM, PLLC**
4228 S. McColl Road
Edinburg, Texas 78539
Tel. (956) 320-0270
Fax (800) 507-4298
**ATTORNEY-IN-CHARGE FOR PLAINTIFFS**